## VICKSBURG AND MERIDIAN RAILROAD COMPANY *v.* PUTNAM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF GEORGIA.

Argued April 22, 1886.—Decided October 22, 1886.

In an action against a railroad corporation by a passenger, for a personal injury
caused by a car being thrown off the track in consequence of a worn-out
rail, the admission of evidence that the general condition of that portion of
the road which included the place of the accident had long been bad, and
that the rails had been in use a great many years, affords the defendant no
ground of exception.

The official reports of the superintendent of a railroad to the board of directors
are competent evidence, as against the corporation, of the condition of the
road.

At a trial by jury in a court of the United States, the judge may express his
opinion upon the facts.; the expression of such an opinion, when no rule
of law is incorrectly stated, and all matters of fact are ultimately submitted
to the determination of the jury, cannot be reviewed by writ of error ; and
the powers of the courts of the United States in this respect are not con-
trolled by State statutes forbidding judges to express any opinion upon the
facts.

In an action for a personal injury, the plaintiff is entitled to recover compen-
sation, so far as it is susceptible of an estimate in money, for the loss and

VOL. CXVIII—35

damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering. but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant.

In an action against a railroad corporation by a passenger, for personal injuries impairing his capacity to earn his livelihood, standard life and annuity tables are competent evidence for the consideration of the jury, but not absolute guides to control their decision. ·

This was an action against a railroad corporation for personal injuries received on September 16, 1881, by a passenger (then forty nine years of age), from the car in which he was seated being thrown off the track, in consequence of a worn-out rail and rotten cross-ties, whereby his collar-bone, shoulder-blade, and several ribs were broken, and his sight, hearing, ease of breathing, and capacity to do business impaired.

At the trial it appeared that the accident happened between the stations of Edwards and Bolton, and that the heaviest traffic was over that part of the road.

A witness, who had travelled over the road some twenty five times, was asked by the plaintiff the condition of the road between those places. The defendant objected to any evidence of the condition of the road generally, or at any place except at the place of the accident in question. But the court overruled the objection, and permitted the witness to answer that the condition of the road between those places was bad; and the defendant excepted.

The plaintiff offered in evidence two printed reports made by the superintendent of the road to the board of directors, one in 1877, which stated that in the portion of the road where the heaviest traffic was done there were about thirty five miles of iron that had been run over for more than twenty five years, and required the closest attention to prevent accidents; and the other, made in 1880, stated that there were twenty five miles of track made of iron forty two years in service, and now almost entirely worn out. The defendant objected to the admission of these reports, because they were not sworn to under examination in court; because they had no reference to the place of the accident, but only to the general condition of

the rails; because they could not bind the defendant as admissions; and because the information of the superintendent as to the condition of the road was derived in part from the reports of subordinates. But the court overruled the objections, and admitted the reports in evidence; and the defendant excepted.

The plaintiff testified to the extent of his injuries, as alleged in the declaration, and that they had been improving and he was gradually getting relief, but that he never expected to get entirely well; and further testified as stated in the charge of the court, quoted below. The surgeon who attended him likewise testified to the extent of the injuries, and, among other things, as follows: "The injuries in such cases are apt to be permanent; sometimes they grow worse, and sometimes they get well. Sometimes they get entirely well; in other cases they do not; cannot tell how it will be in the plaintiff's case."

The plaintiff offered in evidence two tables: The first, entitled, "Expectation Table of Assured Lives," which an agent of the Equitable Life Insurance Company testified was the table used by the American Life Insurance Company, and which showed, at forty nine years old, "Expectation, years 21.6." The second, a table from Reese's Manual, entitled a "Table showing the Value of Annuities on Single Lives according to the Carlisle Table of Mortality," which showed the present value of an annuity of $1 a year for the life of a man aged forty nine to be $10.82. To the admission of each of these tables the defendant objected, because "the plaintiff had not shown a case in which such evidence is admissible, the plaintiff not having been killed permanently or disabled." But the court overruled the objections, and admitted the tables in evidence; and the defendant excepted.

The material parts of the judge's charge to the jury were as follows, the passages excepted to being printed in italics:

"Upon the testimony I charge you as follows: *The principal witness for the defendant was a man who was the section-master, that is, Mr. Smith. If there was a rotten tie there, and he had overlooked it, he would be strongly tempted to conceal it and put the fault on somebody else.* The superintendent was the agent of the road, but he testifies he did not examine it.

He saw the accident was caused by a broken rail. He was in a hurry to get off, and he did not examine it closely. *His testimony, therefore, does not amount to much,* except to establish the fact that it was caused by a broken rail. What broke the rail he does not know. *If it was a bad cross-tie and it was the cause of the accident, why then the negligence of the road would be very great, or the negligence of the employés, because that was a thing anybody could see.* Three of the witnesses say that it was a bad cross-tie. You remember, with regard to these things, it is only a matter of opinion of these men. One says that it was a rusty place, as though it had lain on a rotten cross-tie. Another says, right at the place where it was broken there was a rotten cross-tie. Another stated the primary cause was a rotten cross-tie. Mr. Smith stated that he went and worked on it and studied it, and he came to the conclusion that the rotten cross-tie had nothing to do with it, and he arrived at that conclusion from examining the different breaks, and deduced what was probably the result from them, he saying none of the breaks was under the decayed cross-tie. He is contradicted by one of the witnesses, who says that right under the place which was broken was a rotten cross-tie. *If the rotten cross-tie was the primary cause, there was a plain, open case of negligence.* It would be their duty to look after it, and if that caused the broken rail and this man is damaged the company would be liable.

" But it is insisted by the company that the broken rail came from some secret defect. If you believe that to be true, and that secret defect could not have been ascertained by proper diligence—for every means must be used to detect it, especially in case of iron that is very old—if every means had been used to detect it, then the road is not liable. *If you put an old man to do a young man's work, you ought to be sure that the old man is sound; you ought to test him. And so, if you put an old rail forty years old, that has been run over by train after train for forty years, and put that to do the work of a piece of iron. I believe there is no testimony about the average age, but it is a question of universal notoriety that, as Mr. Smith said in his testimony, old rails are much more apt to break than new.*

If this rail had been here a long time, it was their duty to take extraordinary care. Now, what would that be? Not merely to look at it; you can do that with the very best kind of rails. They would have a man pass over there, as he says, two or three times a week, and look over everything. He does that with the very best kind of rails. When these rails get old and are liable to break, much closer care ought to be taken. *I would not be prepared to say what they ought to do in a case like this. If a rail be forty years old, perhaps they ought to send a man around every day to hammer it. I do not say that this would be their duty. I suggest that to you for your consideration, because this is extraordinary to use a forty years' old rail. There is no evidence that they did anything more with that than they did with any other rail.* In this State the jury are judges of what the duty would be. I do not know what is the law of Mississippi, but as it is to be tried by Georgia law the jury are the judges.

" As to damages: 1st. There is the actual pecuniary damage; that is, the damage which can be computed with certainty, as, for instance, a doctor's bill; that can be computed with certainty, and that has been proven in this case to be $290. Also the loss of time can be computed. It did not appear whether this man lost anything or not by the loss of time—whether he lost his salary. The company would not be bound to pay him, perhaps, for his salary if he did not perform his duty. There might be actual damage for the loss of time if there has been any sustained, but you cannot imagine expenses unless they are proven. *In this case, so far as the salary is concerned, the presumption would be that he had lost his salary. That might be computed; but there is no evidence about it. What the truth is about that we do not know, but, he having lost his time, the presumption is he lost his pay, and that would be another element of damage which you could ascertain with certainty.*

" 2d. Then there is another kind of damage for which there may be compensation, and that is for the pain and suffering. In all these cases of serious injury money cannot pay for the pain and suffering. It only approaches to it; but he is

entitled to some compensation for the pain and suffering. Now, that is left to the enlightened consciences of the jury.

"There is another element of damage, as claimed in this case, which is less certain; to wit, a kind of speculative damage, in which it is ascertained what a man would make at the time of the accident and what he was capable of making afterward. To find out what he was capable of making, you must find out what he did make, and then how much his capacity to do his former duties was injured; and, having ascertained that, find out how old he is; then find out how much he is damaged every year; and then find out from the table which you will have out before you how much $1 of annuity to the end of his expectation is worth, and multiply them together.

"As I said, all this is not very certain. You cannot ascertain it to a certainty for several reasons. No man can tell how long a man is going to live, but you can come close to it; you can tell about how many out of ten thousand are going to die per year. You must only average it. A man who makes a good deal of money one day may get to be a drunkard, or his whole business may break down, as is often the case. His mode of life may change.

"Find out what that man is capable of making. His testimony is he had a salary of $3000, and he had a trade, to wit, an adjuster. That was his profession. He said he made $700 to $1000 as an adjuster. Now, you take this $3000 and what he could have made otherwise, what he has shown he did make otherwise, and find out what he did make in one year. Find out from the proof how much he has lost. There is his own testimony, and it is to be taken like the testimony of every other party at interest; his own testimony is he could not carry on his old business. It required an amount of exercise and travel which would be perfectly impossible for him to take, and he had to go back into a business by the month, where he could have an office and where he would be at expense. Under his contract there would be no expense; they paid his expenses. As an adjuster he had his expenses paid, and $10 a day. Now, in the new business he still keeps up a small business of adjuster. He gets $175 a month.

" I say to you that the kind of damage we are now discuss-. ing cannot be sure, certain.   He may be damaged more or less now, next year he may be better.   This is only one mode of arriving at it.   You must take the whole thing together.   He may get well.   The doctors tell you the chances are that things of this sort are permanent.   He may get well or he may not.   Try to do what is right and just between the parties.   You cannot be accurate as to this kind of damage, you can only approximate.

" Now if, under all these rules, you find the defendant is liable, then find the amount of his liability.   In arriving at the amount of liability, as I said before, there are two things you must find ; first, how much is the actual pecuniary damage he has sustained, the loss of the time and doctor's bill; second, his pain and suffering for the future; and, third, you will find out what he has been injured by the year.   *The company is bound to give him an annuity of the amount he has been damaged by the year, for a period equal to the expectation of the plaintiff's life.*   It would not do to say this : His expectation is thirty years, and he has lost $1000 a year, therefore we will give him $30,000; for the annuity will be payable one part this year and another part next year, and each of the thirty parts payable each of the thirty years.   You must have a sum such that when he dies it will all be used up at the end of thirty years."   [The judge then directed the plaintiff's counsel to " mark the table that has got the calculation ; " and, after the annuity table had been marked opposite forty nine years of age, proceeded :]   " Add that to the present worth of annuity if you find he was damaged.   Find, gentlemen, a verdict, first, for the pecuniary damage; next, the pain, if he has suffered any; next, the loss per year; multiply by the amount you find in that table, and add the three together, and your verdict would be just a general verdict for the amount found."

The jury returned a verdict for the plaintiff in the sum of $16,000, and the defendant brought the case to this court by writ of error.

*Mr. Edgar M. Johnson* (*Mr. George Hoadly* and *Mr. Ed-*

*ward Colston* were with him on the brief), for plaintiff in error, cited *Nelson* v. *The C. R. I. & P. R. R. Co.*, 38 Iowa, 564; *Simonson* v. *The C. R. I. & P. R. R. Co.*, 49 Iowa, 87; *Rowley* v. *London & Northwestern Railway Co.*, L. R., 8 Ex. 221; *Bristow* v. *Sequeville*, 5 Exch. 275; *Milwaukee & St. Paul Railway Co.* v. *Arms*, 91 U. S. 489; *Scheffler* v. *Minneapolis & St. Louis Railway Co.*, 19 Am. & Eng. Railroad Cas. 173.

*Mr. Hoke Smith,* for defendant in error, cited *Central Railroad Co.* v. *Richards*, 62 Georgia, 307; *Atlanta & West Point Railroad* v. *Johnson*, 66 Georgia, 260; *McDonald* v. *Chicago & Northwestern Railroad*, 26 Iowa, 139; *Missouri & Pacific Railway* v. *Collier*, 18 Am. & Eng. Railroad Cas. 281; *Holyoke* v. *Grand Trunk Railway*, 28 N. H. 541; *Brown* v. *Piper*, 91 U. S. 37, 42; *Terhune* v. *Phillips*, 99 U. S. 592; *King* v. *Gallun*, 109 U. S. 99; *Adams Mining Co.* v. *Leuter*, 26 Mich. 73; *Sacalaris* v. *Eureka & Palisade Railway*, 18 Nevada, 155; *United States* v. *Gooding*, 12 Wheat. 460, 470; *Barry* v. *Foyles*, 1 Pet. 311; *American Fur Co.* v. *United States*, 2 Pet. 358; *Cliquot's Champagne*, 3 Wall. 114; *Malecek* v. *Tower Grove & Lafayette Railway*, 57 Missouri, 17; *Norwich & Worcester Railroad* v. *Cahill*, 18 Conn. 484; *Central Branch Union Pacific Railroad* v. *Butman*, 22 Kansas, 639; *Nudd* v. *Burrows*, 91 U. S. 426; *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291; *Transportation Line* v. *Hope*, 95 U. S. 297, 302; *Mitchell* v. *Harmony*, 13 How. 115, 131; *Magniac* v. *Thompson*, 7 Pet. 348; *Stokes* v. *Saltonstall*, 13 Pet. 181; *Railroad Co.* v. *Pollard*, 22 Wall. 341; *Pennsylvania Co.* v. *Roy*, 102 U. S. 451; *Ames* v. *Quimby*, 106 U. S. 342; *The Belgenland*, 114 U. S. 355; *Orleans* v. *Platt*, 99 U. S. 676; *Marion County* v. *Clarke*, 94 U. S. 278; *Schofield* v. *Chicago & St. Paul Railway*, 114 U. S. 618; *Pleasants* v. *Fant*, 22 Wall. 116; *Pence* v. *Langdon*, 99 U. S. 578; *Herbert* v. *Butler*, 97 U. S. 319; *Decatur Bank* v. *St. Louis Bank*, 21 Wall. 294; *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30; *Hendricks* v. *Lindsay*, 93 U. S. 143; *Lancaster* v. *Collins*, 115 U. S. 222, 227.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action against a railroad corporation for personal injuries received on September 16, 1881, by a passenger, then forty nine years of age. The verdict was for the plaintiff in the sum of $16,000, and the defendant tendered a bill of exceptions and sued out this writ of error.

Some of the exceptions relate to rulings and instructions on the question of the defendant's liability, and others to the measure of damages. Those relating to the defendant's liability present no serious difficulty.

There being evidence tending to show that the accident was caused by a worn-out rail, it was, to say the least, within the discretion of the court to admit evidence that the general condition of that portion of the road which included the place where the accident occurred had long been bad, and that the rails had been in use for a great many years. Such evidence had some tendency to prove both that a worn-out rail was the cause of the accident, and that the defendant had neglected to repair the defect. The reports made by the superintendent to the board of directors in the course of his official duty were competent evidence, as against the corporation, of the condition of the road.

In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his opinion upon the facts; and the expression of such an opinion, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error. *Carver* v. *Jackson*, 4 Pet. 1, 80; *Magniac* v. *Thompson*, 7 Pet. 348, 390; *Mitchell* v. *Harmony*, 13 How. 115, 131; *Transportation Line* v. *Hope*, 95 U. S. 297, 302; Taylor on Evidence, (8th ed.) § 25. The powers of the courts of the United States in this respect are not controlled by the statutes of the State forbidding judges to express any opinion upon the facts. *Nudd* v. *Burrows*, 91 U. S. 426; Code of Georgia,

§ 3248. . The exceptions to so much of the judge's charge as bore upon the liability of the defendant cannot therefore be sustained.

We are then brought to a consideration of the exceptions which relate to the evidence admitted and the instructions given upon the measure of damages.

In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant. *Wade* v. *Leroy*, 20 How. 34; *Nebraska City* v. *Campbell*, 2 Black, 590; *Ballou* v. *Farnum*, 11 Allen, 73; *New Jersey Express Co.* v. *Nichols*, 3 Vroom, 166, and 4 Vroom, 430; *Phillips* v. *London & Southwestern Railway*, 4 Q. B. D. 406, 5 Q. B. D. 78, and 5 C. P. D. 280; *S. C.*, 49 Law Journal (Q. B.) 233.

In order to assist the jury in making such an estimate, standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, are competent evidence. *The D. S. Gregory*, 2 Benedict, 226, 239, affirmed 9 Wall. 513; *Rowley* v. *London & Northwestern Railway*, L. R. 8 Ex. 221; *Sauter* v. *New York Central Railroad*, 66 N. Y. 50; *McDonald* v. *Chicago & Northwestern Railroad*, 26 Iowa, 124, 140; *Central Railroad* v. *Richards*, 62 Georgia, 306.

But it has never been held that the rules to be derived from such tables or computations must be the absolute guides of the judgment and the conscience of the jury. On the contrary, in the important and much-considered case of *Phillips* v. *London & Southwestern Railway*, above cited, the judges strongly approved the usual practice of instructing the jury in general terms to award a fair and reasonable compensation, taking into consideration what the plaintiff's income would probably have been, how long it would have lasted, and all the

contingencies to which it was liable; and as strongly depre-
cated undertaking to bind them by precise mathematical rules
in deciding a question involving so many contingencies incapable
of exact estimate or proof. See especially the opinions of Lord
Justice Brett and Lord Justice Cotton, as reported in 49 Law
Journal (Q. B.) 237, 238, and less fully in 5 C. P. D. 291, 293.

In the present case, it was not suggested by the defendant
at the trial that the life tables admitted in evidence were not
standard tables, or not duly authenticated. The only ground
assigned for the objection to their competency was that "the
plaintiff had not shown a case in which such evidence is admis-
sible, the plaintiff not having been killed permanently or dis-
abled"—probably meaning "killed or permanently disabled."
It is a sufficient answer to this objection, that there was evi-
dence from which the jury might conclude that the plaintiff's
disability was permanent.

But the instructions on the measure of damages, to which
exception was taken, cannot be approved.

Those instructions were, 1st, that the plaintiff having lost his
time, the presumption would be that he lost his salary, and that
would be an element of damage which the jury could ascertain
with certainty; and, 2d, that the company was bound to give
the plaintiff an annuity of the amount he had been damaged
by the year, for a period equal to the expectation of his life.

As the judge directed the jury to add the worth of such an
annuity at the time of the accident to the amount allowed for
loss of time, including the loss of salary, it would seem that the
jury were permitted, in making up their verdict, to take into
consideration twice over the earnings lost by the plaintiff be-
tween the time of the accident and the time of the trial.

But the second instruction is open to the more serious ob-
jection of requiring the jury, in estimating the loss of future
income, to compute the average amount of injury to the plain-
tiff's capacity each year, even if they should be satisfied, on the
evidence before them, that the effect of that injury would vary
from year to year, and would be either greater or less as time
went on.

A reference to the rest of the charge rather strengthens than

removes this objection. At the beginning of that part of the charge which relates to this subject, the judge told the jury: " To find out what he was capable of making, you must find out what he did make, and then how much his capacity to do his former duties was injured; and, having ascertained that, find out how old he is; then find out how much he is damaged every year, and then find out from the table which you will have out before you how much $1 of annuity to the end of his expectation is worth, and multiply the three together." In the last paragraph of the charge, just before the sentence excepted to, the judge told the jury that, in arriving at the amount of liability, they must "find out what he has been injured by the year." And finally, after causing the annuity table to be marked opposite forty nine years of age, he directed the jury "to find a verdict, first, for the pecuniary damage; next, the pain, if he has suffered any; next, the loss per year; multiply by the amount you find in that table, and add the three together."

The natural, if not the necessary, effect of these peremptory instructions at the beginning and end of dealing with this matter would be to lead the jury to understand that they must accept the tables as affording the rule for the principal elements of their computation, and to create an impression on their minds, which would not be removed by the incidental observation of the judge, when speaking of the possibility of the plaintiff's getting well—"This is only one mode of arriving at it;" especially, as it was nowhere, throughout the charge, suggested to the jury that they would be at liberty, if they found difficulty in following the mathematical rules prescribed to them, to estimate the loss of income according to their own judgment.

Life and annuity tables are framed upon the basis of the average duration of the lives of a great number of persons. But what the jury in this case had to consider was the probable duration of this plaintiff's life, and of the injury to his capacity to earn his livelihood. Upon the evidence before them, it was a controverted question whether that injury would be temporary or permanent. The instruction excepted to, either taken by itself or in connection with the whole charge, tended

to mislead the jury, by obliging them to ascertain the average injury to the plaintiff's capacity by the year, whether the extent of that injury would be constant or varying; and by giving them to understand that the tables were not merely competent evidence of the average duration of human life, and of the present value of life annuities, but furnished absolute rules which the law required them to apply in estimating the probable duration of the plaintiff's life, and the extent of the injury which he had suffered.   For this reason the

> *Judgment is reversed, and the case remanded to the Circuit Court, with directions to set aside the verdict and to order a new trial.*