### WOEY HO v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1901.)

No. 637.

1. WITNESSES—EVIDENCE OF GOOD CHARACTER—EXCLUSION.
   It is not reversible error for a court to refuse to permit a party to introduce evidence of the general good character of his own witnesses, who are Chinese, where there has been no attempt to impeach their character.

2. APPEAL—REVIEW—CREDIBILITY OF CHINESE WITNESSES.
   The question of the credibility of witnesses must ordinarily rest with the trial court, which is necessarily vested with a large discretion in that matter; and the fact that a court in a habeas corpus proceeding for the discharge of a Chinese person held for deportation refuses to accept and act upon the testimony of Chinese witnesses, though uncontradicted and though the witnesses are not impeached, is not in itself ground for reversal.

Appeal from the District Court of the United States for the Northern District of California.

George A. McGowan, for appellant.

Frank L. Coombs, U. S. Atty., and Edward J. Banning, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. Woey Ho, the appellant herein, claims to be a native-born citizen of the United States. Her testimony is to the effect that she was born at 715 Sacramento street, in the city of San Francisco, Cal., in 1880; that at the time of her birth her parents resided at that place, and that her father was a merchant engaged in business there; that in 1881 she was taken by her father and mother to China; that she knows these facts from the statements made to her by her father and mother at different times; that she resided in Canton, China, about 19 years, and came back to California in April, 1900; that during her residence in China she met Jew Sew, from San Francisco, Cal., a clansman of her father, in 1893 and 1894; that she also met her paternal uncle, Woey Quoon, from San Francisco, Cal.; that she was sent back to California in 1900 by her father, to her uncle, to get married to Jew Mow Hong, a merchant in San Francisco; that upon her arrival she was informed that Jew Mow Hong had died. She introduced three witnesses who corroborated her testimony in every respect, namely, Jew Sew, Woey Quoon, her uncle, and Wong Quon. There was no testimony introduced by the government. The argument in behalf of Woey Ho is substantially to the effect that all the witnesses on her behalf were merchants who had resided for many years in the city of San Francisco and were credible witnesses, their testimony not having been impeached nor in any manner discredited, and that, there being no intrinsic improbability in their testimony, the court should have accepted the same as true, and discharged the petitioner from custody, and that the court erred in entering judgment remanding her to China. At the close of the testimony the following proceedings were had:

"Mr. McGowan: That is the case for the petitioner, if your honor please, in so far as it rests upon Chinese testimony. A number of witnesses can be produced as to the credibility and standing of the witnesses that have been produced before your honor on behalf of the petitioner, and, if an opportunity is granted for that purpose, it will be done. These three merchants have been in the city for periods ranging from twenty-five to thirty years, and they are well known by some of the most prominent business men in the city, who would be only too glad to come and testify before your honor as to their credibility. Of course, no attack has been made upon them, but I understand that your honor has decided, in case No. 11,563, that the burden of proof rests upon the petitioner, and furthermore, that the presumption is taken against not only the petitioner, but the witnesses she produces. I think that will warrant the granting of the request that I now make. The Court: I do not think it would make any difference to me in the matter. Mr. McGowan: Further than that, we would like to offer the records of the Chinese bureau, showing the departure and returns of these several witnesses to and from China. They can be produced, and will corroborate the testimony of these witnesses. Of course, I will require an order from this court to enable me to obtain that evidence, as it is not at my disposal. Of course, there are facts in connection with the case that perhaps might throw some weight when your honor comes to render the judgment, and I would like the opportunity to produce the evidence I have suggested. The Court: I think I will dispose of the case on the evidence that is already before me. I am not satisfied from the testimony that the person named in the petition was born in this country. It is not only a very reasonable presumption that a person of her descent coming to this country from China is a person born in China, but the statute makes it the duty of the court to presume that she was born in China, and to require testimony that is entirely satis-

**factory to show that she is a native of this country.** The court need not be satisfied beyond a reasonable doubt, but must be satisfied that it is not being made an instrument for the evasion of these exclusion laws. With the wisdom of the exclusion laws the court has nothing whatever to do, but it is its duty to enforce them as they are written. I myself do not believe this testimony, and, not believing it, I do not think the court should be required to found any judgment on it; that is, any judgment in favor of the petitioner. An order will therefore be made discharging the writ, and remanding the person named therein to China. Mr. McGowan: We note an exception. And, if the court please, I would like an exception to appear of record to the court's rulings refusing us the right to produce witnesses as to the credibility of the witnesses who have been examined on the part of the petitioner, and the records of the Chinese bureau."

It is evident, from these proceedings, that the district court did not base its order remanding the petitioner upon the ground that the testimony as to the departure and returns of the several witnesses to and from China was not sufficiently proven; otherwise, it would have permitted petitioner's counsel to offer the records of the Chinese bureau. · We do not think the court erred in declining to permit the petitioner to introduce witnesses as to the credibility and standing of the witnesses offered on her behalf. The general rule is that a party is not entitled to give evidence of the general good character of his own witnesses unless their character has been drawn in question by the opposite side. In any event, this was a matter within the sound discretion of the court. A court is not at liberty to arbitrarily and without reason reject or discredit the testimony of a witness upon the ground that he is a Chinaman, an Indian, a negro, or a white man. All people, without regard to their race, color, creed, or country, whether rich or poor, stand equal before the law. It is the duty of the courts to exercise their best judgment, not their will, whim, or caprice, in passing upon the credibility of every witness. The question whether a witness is credible must ordinarily be determined by the tribunal before whom the witness appears, and in the decision of which that tribunal must necessarily be vested with a very wide discretion. In weighing the scales, the conduct, manner, and appearance of the witness, as seen by that tribunal, often forms an important factor in enabling courts, as well as juries, to determine whether or not the witness is entitled to credit. . Appellate courts are, in the very nature of the case, deprived of the opportunity to apply this test, which in a doubtful case might control the judgment of the trial court. In Quock Ting v. U. S., 140 U. S. 417, 420, 11 Sup. Ct. 733, 851, 35 L. Ed. 501, the court, in discussing this question, said:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying, may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to the material facts. All these things may properly be considered in deter-

mining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

We had occasion to review this subject at length in the case of Lee Sing Far v. U. S., 35 C. C. A. 327, 94 Fed. 834, and deem it unnecessary to repeat the views therein expressed. It may be said that the present case comes nearer the border line, beyond which courts must not go, than the case of Lee Sing Far, but it is enough to say that it does not cross it. It is true that in all the Chinese cases this court has been enabled, and taken pains, to point out the unreasonable, improbable, and unsatisfactory points in the testimony which justified the trial court in disbelieving it. This duty, however, rests with the trial courts, and, in a certain sense, may be said to be optional with them. If no reasons are given for their action, this fact does not of itself furnish a sufficient ground to justify a reversal. Error must affirmatively appear. This court cannot assume that the court below acted arbitrarily in refusing to believe the testimony of any witness. The testimony in this case is not, as claimed, above suspicion. It cannot be said that there is no testimony of an improbable nature contained in the record. Wong Quon, who testified to the birth of the petitioner at 715 Sacramento street, San Francisco. Cal., and that he sent a present at the time she was born, and attended the shaving feast usual on such occasions, upon his cross-examination said:

"Mr. Banning: Q. How can you remember the day, month, and year of the birth of this girl? Mr. McGowan: Pardon me, Mr. Banning, but I don't think he gave the day, but just the year and month. Mr. Banning: Q. Do you not remember the day upon which this girl was born? A. I remember the sixth month. I don't remember the day. Q. How can you remember that she was born in the sixth month and the sixth year? A. Through making an entry in the book that a sum of money had been spent on a present. Q. When did you last consult that entry? A. When we got to talking about the birth, I turned the book up and said, 'Oh, yes; I made a present to her.' Q. How long ago was it that you were talking about her birth? A. Her uncle told me that his niece had come back, and could not get landed. It was then. Q. Have you still got your book? A. I am afraid not. Q. What has become of the book? A. I am afraid it is lost. Q. You kept the book twenty years, and lost it in the last three months? A. Perhaps one of the partners has taken it away. We were cleaning in the store, and it was taken out."

The judgment of the district court is affirmed.