## REISS v. REARDON.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1927.)

No. 299, Original.

1. **Bankruptcy** ⟜136(7)—**Referee's order, directing bankrupt to pay trustee large sum, claimed to have been lost in riotous living, held justified, notwithstanding contrary uncontradicted evidence.**

Referee's order, directing bankrupt to pay trustee large sum found to be in bankrupt's possession and part of assets of bankrupt estate, *held* justified, in view of incredibility of uncontradicted evidence that bankrupt lost such money in gambling and riotous living.

2. **Bankruptcy** ⟜446(8)—**Findings of referee, approved by District Court will be affirmed, unless without evidence or induced by error of law.**

Findings of referee, approved by District Court, will be approved by appellate court on petition to revise, unless they were without evidence or induced by some error of law.

3. **Bankruptcy** ⟜136(3)—**Trustee in bankruptcy, seeking recovery of assets of estate from bankrupt, held entitled to ask for goods or proceeds in alternative.**

Where it was impossible for trustee in bankruptcy, when he instituted proceeding to obtain assets of bankrupt estate from bankrupt, to know whether latter had possession of merchandise or proceeds, it was proper to ask for goods or proceeds in alternative.

4. **Evidence** ⟜594—**Uncontradicted evidence is not necessarily conclusive.**

Though, ordinarily, courts are slow to disregard uncontradicted testimony of large number of witnesses, such evidence is not necessarily conclusive, and may be so improbable that it is unworthy of belief.

5. **Bankruptcy** ⟜136(4)—**There is rebuttable presumption that bankrupt has possession or control of money received from sale of merchandise.**

Where bankrupt's testimony showed that all merchandise received by him was sold, and bank deposits sustained such testimony, there was rebuttable presumption that he still had money in his possession or under his control.

Petition to Revise Order of the District Court of the United States for the Eastern District of Missouri.

A turn-over order in favor of Joseph M. Reardon, trustee in bankruptcy of Bernard S. Reiss, was sustained by the District Court, and the bankrupt petitions for revision of the District Court's order. Petition denied.

Irl B. Rosenblum, of St. Louis, Mo. (Louis Mayer, of St. Louis, Mo., on the brief), for petitioner.

Jacob M. Lashly, of St. Louis, Mo. (Robert A. Holland, Jr., and M. P. Phillips, both of St. Louis, Mo., on the brief), for respondent.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is a petition to revise an order made by the referee after a hearing, directing the petitioner to pay to the trustee a large sum of money found to be in the possession of the petitioner and being a part of the assets of the bankrupt estate. Upon a petition for review the order was by the District Court sustained.

[1] The only ground upon which it is sought to have the petition to revise granted is that there is no evidence whatever to justify the order made, and that the undisputed evidence clearly establishes that the petitioner did not have either the goods claimed to have been concealed by him or the proceeds thereof. It is also claimed that the petition asked for the return of the goods, and that therefore no order could be made requiring the petitioner to pay over the value of the goods.

The petition of the trustee, upon which the hearing was had, stated that the petitioner has in his possession or under his control a large amount of merchandise, consisting of men's and boys' shoes, a description of which is set out, or, if sold, the proceeds thereof, of the value of $28,245, and the prayer of the petition is that he be required to turn over and deliver forthwith the property above mentioned, or the proceeds thereof, amounting to the said sum of money. The response of the bankrupt was that all the merchandise he received during his conduct of his business was sold by him in the regular course of business; that he has not in his possession, in his custody, or under his control any of the proceeds of said merchandise.

The finding of the referee was that "the petitioner has in his possession or under his control the sum of $27,345, in money which constitutes the assets of his estate in bankruptcy, and he is directed to turn that sum over to the trustee." The referee filed an elaborate memorandum or opinion, in which he states that he finds that the bankrupt sold the shoes which he purchased, except those remaining on hand at the time of his bankruptcy, and deposited the proceeds in his bank account at the Franklin Bank, in St. Louis; that from June 2, 1924, to August 25, 1924, he withdrew by checks upon the Franklin Bank for his personal use sums aggregating $30,745. This money the bankrupt testified he expended in gambling, in going out with women, and in purchasing a certain lot and land in Oklahoma. He testified to that effect, and also introduced a number of witnesses, most of them rather disreputable, some of whom claimed that they gambled with the petitioner, and saw him gamble at different places, and that he lost large sums of money.

The referee held that the presumption arising from the evidence that this large shortage, the money drawn out, a very small part of which was applied to the payment of his debts, is still in his possession or under his control, was not overcome by that testimony. In other words, he did not consider the witnesses entitled to any credibility. Of course, it was impossible for the trustee to introduce proof that the bankrupt did not lose the money gambling, or squandered it in riotous living.

He also claimed that he had bought from his friend and associate, Morris S'Renco, a certain lot in a small town and 20 acres of land in Oklahoma for $4,625. He testified that he had never seen the lot or the land, knew nothing of it, made no inquiries, but accepted the word of his friend that it was valuable oil land; but as a matter of fact it was not oil land, nor was it within proximity of any lands on which oil had been discovered. S'Renco testified that this land consisted of one lot, for which S'Renco had paid $1,500, and 20 acres, for which he had paid $2,500, and that the payments were made in cash. Morris Kessler corroborated the testimony of S'Renco.

Abraham Goldstein testified he owned a one-third interest in the 20 acres of land, which were sold to S'Renco by Morris Kessler, and that he received for his one-third interest $80 or $90, and that he considered $80 a fair valuation of his one-third interest. Kessler, another witness testified that he had joined in the deeds for the lot in Owassa, and the 20 acres sold to S'Renco by Morris Kessler; he never received anything for his interest; that he had never seen S'Renco; had no business connection with Morris Kessler who was his brother-in-law and also his cousin by marriage. It was also shown in evidence that no such sums of money were deposited in the bank in which Morris Kessler kept an account; that Kessler had a safety deposit box at the First National Bank, in which he claims to have placed the money he received from S'Renco. The bank's records, testified to by the keeper of them, disclosed that no admittances were granted to that safety deposit box during the month of July, 1924, the month Kessler claimed he placed the money in it.

The contention on behalf of the petitioner is that, as the evidence, which is uncontradicted, shows that the money was actually lost,

neither the referee nor the District Judge had a right to disregard it, and for this reason the order should be set aside. Ordinarily any court would be very slow to disregard the testimony of a large number of witnesses, who are not contradicted; but there are exceptions to this rule. The claims of bankrupts, whose assets suddenly disappear shortly before bankruptcy proceedings are begun, that the money has been lost in gambling and riotous living, are so common that courts naturally look upon them with suspicion. Usually the witnesses introduced to bolster up such claims are men whose standing in the community is of the very lowest. In this case it was found by the referee, and the evidence establishes it, that the bankrupt had been a successful merchant; that he had a family to whom he was attached. He had accumulated what was quite a small fortune to him; but suddenly he makes unusually large purchases of merchandise, and within a short time thereafter he finds himself bankrupt, with practically no assets and large liabilities. His witnesses, who claim to have won large sums of money from him in gambling, are men of no means, employed at small wages. The pretended purchase of the Oklahoma property is so unreasonable that the referee was justified in disregarding it. Property valued at $240 is alleged to have been bought by a friend of his, a man of no means, S'Renco, for $4,000, paid for in actual money taken to Oklahoma from St. Louis. The man, who claims to have made the sale, did not deposit the money in the bank in which he kept his deposits, but claims to have placed it in the safety deposit box; yet the records of the bank in which he had the safety deposit box, and in which he testified he placed this money, fail to show that during the entire month he ever visited the safety department of the bank.

[2] We are here confronted with the findings and decision of the referee, a lawyer of ability and great experience in bankruptcy matters, having been referee in bankruptcy in the city of St. Louis almost ever since the Bankruptcy Act has been in force; he saw most of the witnesses, and had an opportunity to note their demeanor and their manner of testifying. Such a finding is entitled to great consideration. Upon the petition for review the learned trial judge, after careful consideration of the testimony, reached the same conclusion. Thus we have two experienced judges reaching the same conclusion, and in such a case it is the rule of the appellate courts to approve these findings, unless it was without any evidence or induced by some error of law which induced them to be made. Baker v. Bishop-Becker Co. (C. C. A. 4) 220 F. 657; Schweer v. Brown (C. C. A. 8) 130 F. 328; Schlafly v. United States (C. C. A. 8) 4 F.(2d) 195, 198, decided by the referee in bankruptcy and approved by the District Judge.

[3] It is also claimed on behalf of petitioner that there is no finding that he now has either the goods or the money in his possession, or under his control. But as he does not claim that he has parted with any of the merchandise or its proceeds since he went into bankruptcy, and the time within which all this money disappeared was so short, the referee was justified in finding that he must still have it in his possession. It was also claimed that the petition of the trustee for this proceeding claimed certain specific goods to have been concealed from the trustee; but the petition goes further, and asks for these goods or the proceeds of their sale. As it was impossible for the trustee, when he instituted this proceeding, to know whether the bankrupt had possession of the merchandise or the proceeds, if sold by him, it was proper to ask for an order in the alternative.

[4] Uncontradicted evidence is not necessarily conclusive. The evidence may be so improbable that it is unworthy of belief. Quock Ting v. United States, 140 U. S. 417, 11 S. Ct. 733, 851, 35 L. Ed. 501; Schweer v. Brown, supra; In re Baumhauer (D. C.) 179 F. 966; Elwood v. Western Union Telegraph Co., 45 N. Y. 549, 6 Am. Rep. 140; Koehler v. Adler, 78 N. Y. 287; De Maet v. Fidelity Storage, etc., Co., 121 Mo. App. 92, 96, 96 S. W. 1045; Wait v. McNeil, 7 Mass. 261; 4 C. J. 849; 23 C. J. 47.

[5] From the bankrupt's testimony it appears that all the merchandise was sold by him in due course, and his deposits in the bank sustain this testimony. We must therefore assume, unless rebutted by credible testimony, that he still has the money in his possession or under his control. As this is a petition to revise, the court will rarely go beyond the findings of the referee, approved by the District Court (Commercial National Bank v. Stockyards Loan Co., 16 F.[2d] 911, decided by this court in an opinion filed December 31, 1926; Schlafly v. United States, supra), unless there is an error of law.

The petition to revise is denied.