## CLINE v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
June 16, 1927.

No. 7613.

**1. Poisons ⬤⟳9—Evidence showing defendant obtained morphine for addict as act of friendship held insufficient to sustain conviction of charge of selling.**

Evidence that defendant procured morphine for an addict after repeated coaxing, and only as an act of friendship and sympathy, *held* insufficient to sustain conviction for selling morphine.

**2. Criminal law ⬤⟳756—Court, reviewing facts for purpose of aiding jury, must do so fairly, and may not state only facts on one side of issue.**

Court, feeling duty to review facts for purpose of aiding jury in correct understanding, must do so in fairness to both litigants, and may not state facts on one side of issue only.

Van Valkenburgh, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri; W. W. Estes, Judge.

Louis Cline was convicted of selling morphine and he brings error. Reversed and remanded.

Frank D. Rader, of Kansas City, Mo. (James M. Rader, of Kansas City, Mo., on the brief), for plaintiff in error.

William L. Vandeventer, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., on the brief), for the United States.

Before LEWIS and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

LEWIS, Circuit Judge. [1] Cline, plaintiff in error, was convicted of the charge of selling ten grains of morphine to John Sivewright, and thereon sentenced to three years' imprisonment in the penitentiary. The transaction and Cline's connection therewith was brought about in this way: A government narcotic agent arrested one John E. Sivewright, without warrant, about 2 o'clock at night and took him to the agent's office in Kansas City, where the agent interrogated Sivewright and then released him with instructions to report at the office the next morning at 10 o'clock. Sivewright testified that while he was at the agent's office at night the agent said "he had it on me, evidence on me," and that if I made a case for him "he would turn me loose." Sivewright further testified he went back the next morning at 10 o'clock and the agent talked to him again, that he told the agent he could not make the purchase, that he had been getting it up at Twelfth and Wyandotte from a chauffeur up there, but the chauffeur had refused to sell to him three or four times and another man he had been buying it from was arrested a couple of days before that. He further testified that before he went to the narcotic agent at 10 o'clock he went to Louis Cline, whom he knew well and had been on friendly terms with for eight or nine years, and who at that time was salesman in a cigar store on the corner of Twelfth and Wyandotte Streets, and begged Cline to go to the chauffeur, who had a livery stand near the cigar store, and see if he could not buy morphine from the chauffeur for him. He pointed the chauffeur out to Cline. He told Cline he could not buy it from the chauffeur, that he was sick and he had to have it in order to work, that inasmuch as the chauffeur had a stand out in front of the cigar store Cline might talk to the chauffeur and get it for him, that he did this because the agent had told him he had to make a buy and he would then get turned loose; but he did not state that to Cline as his reason for wanting to get the drug. He was crying when he talked to Cline. Cline had assisted him in other ways before that but he had never theretofore gotten any of the drug from Cline or through Cline. Cline testified that he had known Sivewright for eight or nine years, that they were friends and that he had helped Sivewright on different occasions, that Sivewright came to him at the cigar store on this morning sick and crying and said he had to go to work and he could not do it unless he got some morphine, that he told Sivewright he ought to go to the hospital and take the cure, that Sivewright kept on begging him to get morphine for him. He said, "I will lose my job; lost a job a couple of weeks ago and I have been pretty well down. If you could get it for me you would help me out;" that he, Cline, repeatedly told Sivewright he would not do it but Sivewright pointed to the chauffeur standing on the corner and said, "I know you can get it," and after Sivewright had pleaded with him for about a half-hour he told him he would see if he could get it from the chauffeur, and he told Sivewright to come back in the afternoon. Cline later went to the chauffeur and told him he wanted the morphine for a sick friend. He testified that Sivewright was a physical wreck, that he felt sorry for him and when he pointed out the chauffeur he decided to try to get it from him. He told Sivewright he would use his own money if he got it; he did not know whether he could get it from this chauffeur or not. The chauffeur went down the street and came back in about a half-hour and gave Cline the morphine, for which Cline handed him five dollars. He further testified that he had never purchased or sold morphine on any other occasion, was not an addict and never had morphine in his possession except on this one occasion. When Sivewright left Cline that morning he told Cline to meet him in the toilet of a nearby pool-room when Sivewright should return in the afternoon. Sivewright went back to the narcotic agent when he left Cline. The narcotic agent gave Sivewright a marked five-dollar bill and at the appointed time in the afternoon the agent and a police officer followed Sivewright to the pool-room. They saw Sivewright and Cline go into the water closet and when they came out Cline was arrested and searched and the marked five-dollar bill found on his person. There is no contradiction of any of the testimony given by Sivewright and Cline in the particulars that have been stated. The agent on his rebuttal testimony as to Sivewright's physical condition did testify: "He didn't look sick at all, outside of being a dope-fiend, a drug addict. You could tell it by his outward appearance, his eyes and so forth, but he wasn't

what you would call sick. He had enough to keep him going.".

There was no evidence that Cline had ever handled or furnished narcotic drugs to addicts, nor was it claimed that it had ever been reported that he had done so. He testified that he had not and that he got the drug for Sivewright because of Sivewright's insistence and pleading and his friendship and sympathy for him, and for no other reason. Cline has a wife and two children, and he proved by several of his neighbors that he bore a good reputation. His defense was that he had been entrapped into getting the drug for Sivewright.

[2] We think the defense was completely and clearly made out and that the court erred in refusing to direct a verdict of not guilty on that ground, or else in not setting the verdict of guilty aside when it was returned. The court saw fit to submit the issue of entrapment to the jury, but, as we have said, the evidence on that defense sustains only one conclusion, i. e., the agent in using Sivewright entrapped Cline. Butts v. United States (C. C. A.) 273 F. 35, 18 A. L. R. 143; Meek v. United States (C. C. A.) 16 F.(2d) 568. Furthermore, while the court's instruction to the jury on the subject of entrapment, given in general terms, correctly stated the law on that subject, its comments on the facts in relation thereto were not fair to the defendant. Only the facts that might have a tendency to weigh against the defendant were pointed out,—none that weighed in his favor were mentioned. If the court feels that it is under duty to review the facts for the purpose of aiding the jury in a correct understanding of them, it must do so in fairness to both litigants, and not state only the facts on one side of the issue; besides, the court in this case, in reviewing the facts favorable to the prosecution, came so dangerously near making an argument for a verdict of guilty that it cannot be said that was not its effect on the jury.

Reversed and remanded.

VAN VALKENBURGH, Circuit Judge (dissenting). I regret that I am unable to agree with my associates in the conclusion reached, nor can I assent to all the views expressed in the opinion by which that conclusion is announced. The issues are simple. It stands without contradiction that a sale of morphine was made by the defendant to the witness Sivewright as charged by the government. The only defense made is that of alleged entrapment, analogous to confession and avoidance. The elements of this defense were clearly and correctly set forth by the court in its charge. The jurors were told that "if you find and believe from the evidence in this case that the agents of the government or its employees—and in this case the informer was an employee of the government—acting for the government incited, induced and persuaded the defendant to commit a crime which he would not otherwise have committed, then you must find the defendant not guilty." The comment of the court to which reference has been made consisted merely of legitimate reference to the outstanding facts from which the issue was to be resolved—uncontradicted facts which necessarily involved the defense interposed in all its aspects; upon these facts the court expressed no opinion.

At the outset the jurors were told that they were the sole judges of the facts and of the question of guilt or innocence, of the credibility of witnesses and of the weight and value to be attached to testimony. Again, in entering upon his brief reference to facts, the court said: "I shall not take up much of your time in a review of the testimony in the case. You are the sole judges of the testimony, and whatever I might say by way of referring to the testimony would be merely to assist you. Neither my recollection nor the recollection of the attorneys is binding upon you. Your own recollection must govern you in your deliberations and in your decision in this case."

And, at the close, this: "I am not expressing any views upon the subject at all, but am merely referring to the facts and testimony for your consideration."

If he had seen fit to express an opinion upon the facts, or if his remarks could be so construed, the trial judge would have been well within his rights. "The presiding judge may, if in his discretion he think proper, sum up the facts to the jury; and if no rule of law is incorrectly stated, and the matters of facts are ultimately submitted to the determination of the jury, it has been held that an expression of opinion upon the facts is not reviewable on error." Starr v. United States, 153 U. S. 614, 624, 625, 14 S. Ct. 919, 38 L. Ed. 841; Lincoln v. Power, 151 U. S. 436–442, 14 S. Ct. 387, 38 L. Ed. 224; Simmons v. United States, 142 U. S. 148–155, 12 S. Ct. 171, 35 L. Ed. 968; Lovejoy v. United States, 128 U. S. 171–173, 9 S. Ct. 57, 32 L. Ed. 389; Rucker v. Wheeler, 127 U. S. 85–93, 8 S. Ct. 1142, 32 L. Ed. 102. When in his judgment the due administration of justice requires it. United States v. Philadelphia & Reading Railroad, 123 U. S. 113, 114, 8 S. Ct. 77, 31 L. Ed. 138; Vicksburg,

etc., R. R. Co. v. Putnam, 118 U. S. 545–553, 7 S. Ct. 1, 30 L. Ed. 257.

This court in Rudd v. United States, 173 F. 912–914, has announced the rule, often quoted with approval, that a trial court in both civil and criminal cases has the right to comment upon the facts, to express its opinion upon them, and to sum up the evidence, as one of the most valuable features of the practice in the courts of the United States; and that "a judge should not be a mere automatic oracle of the law, but a living participant in the trial, and, so far as the limitations of his position permit, should see that justice is done." Upon the conceded facts adduced by the government the offense charged was complete. Whether it was finally established to the satisfaction of the jury depended upon the view taken by that body of the defense of entrapment. The issue was fully and fairly submitted and the decision was for the jury alone.

It is suggested that the testimony of the defendant and of his friend, the informer, upon the subject of entrapment is uncontradicted. But uncontradicted testimony is not necessarily conclusive. The credibility of witnesses which may be determined by their manner and demeanor while testifying, and their interest in the controversy, is for the triers of the facts, who are to decide whether they believe the witnesses or not. A court or jury is not bound to adopt the statements of witnesses simply for the reason that no other witness has denied them. "The court will pay all due respect to the testimony of a witness, who stands uncontradicted and unimpeached; but the credit of every witness must be taken into the consideration of the jury; and this is peculiarly and emphatically within their province." Wait v. McNeil, 7 Mass. 261–263; 4 Corpus Juris, 848; Quock Ting v. United States, 140 U. S. 417, 420, 421, 11 S. Ct. 733, 851, 35 L. Ed. 501; In re Baumhauer (D. C.) 179 F. 966; Woey Ho v. United States (C. C. A. 9) 109 F. 888; Loan Co. v. Killian, 153 Mo. App. 106–111, 132 S. W. 280 (reviewing Missouri decisions); S. W. Brewery & Ice Co. v. Schmidt, 226 U. S. 162–169, 33 S. Ct. 68, 57 L. Ed. 170; Koehler v. Adler, 78 N. Y. 287; Reiss v. Reardon, Trustee (C. C. A. 8) 18 F.(2d) 200, opinion filed March 22, 1927.

The knowledge of facts respecting this alleged entrapment rested wholly with the defendant and the informer. This defense interposed at the trial leaves the government without means or opportunity to refute it by affirmative testimony. The situation is

analogous to that of alibi, concerning which it is held not to be error to warn the jury that evidence of an alibi should be considered with caution and care. It is unnecessary to apply that rule to the case at bar; but the situation calls at least for the exercise of discretion in weighing the credibility of witnesses. The use of addicts in bringing to light the source of their supply is recognized as one of the most effective and necessary instrumentalities to be employed in the prevention of this unlawful traffic. If the testimony of informers, who are interested in continued procurement of the drug, and of their purveyors, is to be accepted as conclusive, in the absence of contradiction, a regrettable barrier has been erected in the path of law enforcement.

In my judgment, a substantial case was made, and was fairly submitted. The verdict of the jury finds ample support in the record, and the judgment should be affirmed.