## SOUTHERN PAC. CO. v. KLINGE.
### No. 765.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1933.

Rehearing Denied June 17, 1933.

86

Robert L. Judd, of Salt Lake City, Utah (Emmett M. Bagley and Paul H. Ray, both of Salt Lake City, Utah, on the brief), for appellant.

Willard Hanson, of Salt Lake City, Utah (Lindsay R. Rogers, of Salt Lake City, Utah, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

In an action for the loss of his right arm, brought under the Federal Employers' Liability Act (chapter 2, tit. 45 USCA, §§ 51–59), plaintiff recovered judgment for $27,000. The only issue in the case was the amount of the damage, the defendant conceding its liability under the statute. Various errors are assigned.

1. The action was brought in the Central Division of the District of Utah, in which the defendant was doing business at the time the action was commenced. There was a motion to dismiss on the ground that the action should have been brought in the Northern Division, where defendant maintained its principal place of business in Utah. The accident occurred in Oregon, and it does not appear to be a vital matter whether the amount of the damage is ascertained before Judge Johnson in Salt Lake City, where plaintiff and counsel on both sides live, or before Judge Johnson in Ogden, where the defendant's clerical forces work. Notwithstanding the practical unimportance of the point, it is pressed upon us. The jurisdiction of the district court of Utah is not challenged, and cannot be, for the statute itself, in Section 6, offers plaintiff a choice of the districts of (a) defendant's residence—in this case Kentucky, (b) where the cause of action arose—in this case Oregon, or (c) where the defendant is doing business at the time of the commencement of the action. Plaintiff selected Utah, a district in which defendant was doing business, as his forum, as he had a right to do. The defendant's objection is not to the district, but to the division in which the suit was filed, to venue and not to jurisdiction. Section 53 of the Judicial Code (28 USCA § 114) provides that transitory actions shall be brought in the division where defendant resides. That section is without application here, for the defendant does not "reside" in either division, Seaboard Co. v. Chicago, etc., Ry. Co., 270 U. S. 363, 366, 46 S. Ct. 247, 70 L. Ed. 633, and the action is not brought under the first option given by the statute, but the third. The jurisdiction of the Utah court rests on the fact that the defendant was doing business in the state when the suit was brought; the challenge to the venue is because it did more business in the Northern Division than the Central. The point is without merit. There was a motion to quash the summons, but neither the summons nor the return is in the record. The federal statutes being silent on the subject, the service of process is governed by the state statutes under the Conformity Act (28 USCA § 724). Amy v. Watertown, 130 U. S. 301, 9 S. Ct. 530, 32 L. Ed. 946; Penna. Fire Ins. Co. v. Gold Issue Mining Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610; Atchison, T. & S. F. Ry. Co. v. Drayton (C. C. A. 8) 292 F. 15; Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 S. Ct. 526, 42 L. Ed. 964; McCord Lbr. Co. v. Doyle (C. C. A. 8) 97 F. 22, certiorari denied, 176 U. S. 682, 20 S. Ct. 1025, 44 L. Ed. 638. The statute authorizes service upon any one of a number of persons, section 6548, Comp. Laws Utah 1917, and there is no showing of lack of proper service.

2. The trial court denied a motion to stay the proceedings, and this is assigned as error. It appears that plaintiff first filed an action in the state court for this injury, and recovered a verdict of $12,000. Plaintiff moved for a new trial, and it was granted. Thereupon plaintiff dismissed his action and sued in the federal court. Defendant then appealed to the Utah Supreme Court from the ruling of the lower court granting a new trial and permitting a dismissal of the action. That appeal was pending in the Supreme Court of Utah when the case here was set for trial; as far as we are advised it is still pending. Since the judgment here must be re-

versed on other grounds, the point may be moot before the cause is again reached for trial. It may be well to say, however, that both actions being personal, the pendency of the same action in one court does not deprive another court of jurisdiction. If the judgment in the state court should be reinstated by the Supreme Court as of the date of its rendition, the prior judgment would be an adjudication and render unavailing all the effort in this case, for of course two judgments for the same injury could not be collected, and the one prior in time must prevail. The uncertainty as to the existence of a prior judgment, which will be resolved when the Supreme Court of Utah passes on the appeal, distinguishes the case from McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762. The matter of a stay under these circumstances is within the discretion of the trial court, and its action will not be disturbed except for abuse thereof. The comity that exists between courts, and a desire to save litigants unnecessary expense, has often prompted trial courts to stay proceedings until the court whose jurisdiction was first invoked has completed its task. Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 75 L. Ed. 520, Ex parte Green, 286 U. S. 437, 52 S. Ct. 602, 76 L. Ed. 1212, Radford v. Folsom (C. C.) 14 F. 97. A defendant should not, of course, be permitted to postpone a trial by a frivolous pursuit of remedies in another court, but there is no suggestion here that defendant is not in good faith prosecuting its appeal. The question may not arise on another trial, and we leave the subject with the suggestion that a stay of proceedings until the existence of a judgment in the state court is determined might well save time and effort of court, counsel and parties, and accord with the traditional comity that exists between the courts of the state and the nation.

■ 3. Objection is made to the testimony of an actuary who presented annuity tables for the assistance of the jury. These were computed for the expectancy of the plaintiff, and the figure $2,400 was used as a base. The table gave the present sum necessary to return $2,400 a year for the expectancy, at various percentages ranging from two to eight per cent. After the jury found the annual impairment of earning power resulting from the loss of the arm, and the rate of interest which could reasonably be expected from safe investments, a simple computation applied to the table would bring them to a correct verdict. Complaint is made because $2,400 was used as a base figure, the contention being that the loss of the arm did not impair the earnings to that extent. Some figure had to be used; whether it was $100, or $1,000, or $10,000 does not affect the correctness of the table. Whatever figure was used, the jury must first find the loss of earning power and then use the table. The same objection could be made to any tables of interest or annuity calculations, unless perchance the base used by the table happened to be the amount in suit. The size of the verdict indicates the jury was not misled. Figured on a four per cent return, which a jury might fairly find to be all that could reasonably be expected from safe investments, the verdict is based on a loss of earning power of about $1,500 a year. This assignment is entirely without merit.

■ 4. Error is assigned because the trial court declined to charge the jury that their verdict should be computed on the assumption that money could safely be invested at eight per cent., the legal rate in Utah. The trial court was clearly right. The jury should determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make in that locality. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367. Whether the statutory rate on judgments is even evidentiary might be questionable; but certainly it is not conclusive. Other objections are made to the charge of the court, and to his refusal of certain requests. They do not merit detailed examination. The trial court, concisely but clearly, told the jury to ascertain the impairment of plaintiff's earning power resulting from his injury; determine his expectancy; and arrive at a verdict which would reflect the present worth of that impairment. With annuity tables in evidence, the court's charge rendered the jury's task a comparatively simple one.

■ 5. Upon a motion for a new trial, it was established by affidavits of jurors, without contradiction, that while the jury was deliberating, one juror said to the others that he had been told that the defendant had offered $20,000 in settlement of the case. After an overnight adjournment, he said he had investigated and verified the fact that such a sum had been offered. It need hardly be said that nothing could be more prejudicial to a defendant's rights. It would be an unusual juror who would have the courage to return a verdict for less than the defendant had of-

fered, where liability was conceded. The trial court denied the motion for a new trial, on the ground that public policy does not permit of an exploration of the happenings in the jury room except in "the greatest and most important cases," of which this was not one. While the granting or denial of a motion for a new trial is not an appealable order, Hunt v. United States (C. C. A. 10) 53 F.(2d) 333, such ruling may be assigned as error on an appeal from a final judgment. The motion is addressed to the sound discretion of the trial court, and its action thereon will not be disturbed except where there is an abuse of discretion. Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C. A. 10) 49 F.(2d) 146; McPherson v. Cement Gun Co. (C. C. A. 10) 59 F.(2d) 889. But where discretion is lodged, it must be exercised. Felton v. Spiro (C. C. A. 6) 78 F. 576.

While the trial court admitted the affidavits in evidence, it appears that the facts therein disclosed were not considered by him. In a written opinion,[1] the court stated that in this sort of a case, the losing party could not thus impeach the verdict of the jury; furthermore, we are satisfied that if the court had felt at liberty to consider them, a new trial would have been granted.

We are of the opinion that the trial court should have considered the facts disclosed by the affidavits, and have granted a new trial. We think the distinction is not between the types of cases in which the proof may be offered, but rather goes to the question of what it is the moving party offers to prove.

A losing party may not, in any type of case, explore a juror's mind for the purpose of demonstrating that his vote resulted from a misconception of the evidence or a misunderstanding of the charge or from prejudice. If the juror reached a conclusion on evidence presented for his consideration, his conclusion cannot be dissected. For such a purpose, no evidence is competent, be it that of a juror or an outsider to whom the juror disclosed his inmost thoughts. Proof of such a fact is excluded for at least two reasons: first, because there would be no end to litigation if verdicts could be set aside because one juror did not correctly understand the law or accurately weigh the evidence; second, the proof of his mental process is locked in the breast of the juror, and is not capable of refutation or corroboration.

On the other hand, if it is charged that a juror's conclusion was arrived at, not from the evidence, but as the result of bribery, or from the consideration of evidence or matters not a part of the trial proceedings, but brought in from the outside, such a charge can be and must be explored, and the testimony of a juror is competent in determining the existence of the fact. If such an outside matter is introduced into the deliberations of a jury it is for the trial court to determine whether the extraneous matter is of sufficient gravity to require a new trial, for it will not do to set aside verdicts because of every indiscreet remark dropped in the course of its deliberations. The trial court, in the first instance, must determine whether such improper matters are inconsequential or grave, that is, whether they were of a nature as to make it probable that they entered into the consideration of any juror when his vote was cast; and on that question, testimony of jurors as to the force exerted on their minds by such improper considerations, if admitted at all, must not be treated as controlling. Clark v. United States, 53 S. Ct. 465, 77 L. Ed. ——; McDonald v. Pless, 238 U. S. 264, 35 S. Ct. 783, 59 L. Ed. 1300; Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917; United States v. Reid, 12 How. 361, 13 L. Ed. 1023; McKibben v. Philadelphia & R. Ry. Co. (C. C. A. 3) 251 F. 577; Stevenson v. Tennessee Copper Co. (C. C.) 193 F. 268 (opinion by Justice Sanford); Callahan v. Chicago, M. & St. P. Ry. Co. (C. C.) 158 F. 988; Felton v. Spiro (C. C. A. 6) 78 F. 576 (opinion by Judge Taft); Perry v. Bailey, 12 Kan. 539 (opinion by Justice Brewer); Woodward v. Leavitt, 107 Mass. 453, 9 Am. Rep. 49.

There is much discussion in the authorities as to the testimonial privilege of a juror. Whether there be such, we need not now inquire. The question here, and in most cases, goes not to the manner of proof but to the materiality of the fact sought to be proven. The deliberations of a jury must not be deflected by outside considerations, and the duty rests upon the trial court to see to it that verdicts are not so deflected. The discharge of that duty will ofttimes be difficult and delicate. If the jury system is to last, it is important that verdicts should not be set aside for trifling reasons; of still greater importance is it that a jury's verdict, although misguided, should be a verdict "on the law and the evidence." Such outside matters as were here injected into the jury room, poison the fountain of justice at its source.

---

[1] Not for publication.

The judgment is therefore reversed and remanded with directions to grant a new trial.

Reversed and remanded.