### MACIAS et al. v. WESTERN UNION TELEGRAPH CO. et al.

### No. 8436.

United States District Court
S. D. California, Central Division.

Nov. 23, 1948.

David Marcus, of Los Angeles, Cal., for plaintiff.

Lawler, Felix & Hall, of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

The motion of the plaintiffs for a new trial, filed on October 30, 1948, heretofore argued and submitted, is now decided as follows:

I. The said motion for a new trial is granted as to the plaintiff Richard Macias, suing herein by his guardian ad litem, Leopoldo Macias, and a new trial is hereby ordered as to him on the first cause of action set forth in the complaint.

II. The said motion is denied as to the plaintiff Leopoldo Macias.

#### Comment.

Ordinarily, I would not substitute my own judgment for that of a jury. See my opinion in Caldwell v. Southern Pacific Co., D.C.Cal., 1947, 71 F.Supp. 955. But in this case, I feel that the verdict of the jury is so grossly inadequate that to allow it to stand as to the minor would be sanctioning an injustice to a child of tender years.

When a minor barely five years old is before the Court through his guardian ad litem, appointed by the Court, the responsibility of the Court as to the verdict is greater than in ordinary cases. It follows that the verdict of a jury in such a case calls for a greater scrutiny than the verdict against an adult. This also flows from the fact that in case of a settlement without trial, the settlement would have to

be approved by the Court, and that the payment of attorney's fees out of any settlement or award would also be subject to the sanction of the Court. California Probate Code, sec. 1530a; In re Guardianship of Carlon, 1941, 43 Cal.App.2d 204, 110 P. 2d 488.

In the present case, the testimony as to the nature of the injuries and suffering of the child stands uncontradicted. The jury must have believed the parents who testified to the mental attitude of the child since the injury. For they took the parents' version as to the expenditures by awarding them the sum of $150, although, as a fact, the father could not produce direct evidence of actual expenditures in a sum greater than eighty or ninety dollars. More, the defendants' own physician, Dr. F. Earl Brown, who examined the child on October 2, 1948, testified at the trial that at the time of the examination, scars were still visible on the child's body.

The portion of his report dealing with this subject reads:

"There is a scar on the left arm resulting from an abrasion that is superficial, about two and one-half inches long and one-inch wide, which has fully healed; there is no scab. There is evidence of a similar abrasion over the left shoulder blade which is about four-inches long and one-inch wide; this is smoothly healed and superficial involving the skin only. There is a linear scar five-inches long between the shoulder blades, extending obliquely downward, which also is in the skin only and appears to result from a scratch. There is no evidence of injury to the spine in any region."

In the same report, and dealing with the mental effect of the accident, the physician, while attributing some of the symptoms described by the parents to him and in the courtroom to causes unrelated to the accident, admitted that car fright existed, that it was serious, and would take at least another year to overcome. His report said:

"One of the great complaints is car fright, and also fear of the sound of sirens. This is a mental reaction entirely and may persist for a while, but as the child gets a little older, he will overcome that entirely; it is not a serious element in the considera-

tion of the details of the accident. By another year, he probably will have overcome that fear."

The examination of Dr. Brown, and especially the cross-examination by plaintiffs' attorney, confirmed the view that evidence of fright, manifesting itself in various manners, including bed wetting, existed and would continue for at least a year longer. This is evident from the following portions of the examination of Dr. Brown which I have caused to be transcribed by the court reporter from his stenographic notes of the proceedings of October 20, 1948:

"The Court: Eliminating any opinion based upon your own findings and assuming that the child had not shown any nervousness before the accident, and after the accident he had these symptoms, waking up at night and crying and the symptom of bed wetting, to which the parents have testified, which he did not do before, can you relate that to the accident or is it due to some other causes?

"The Witness: Those symptoms arise out of the nervous reaction of the accident, and may leave the child in a nervous state, that is true. In this case it is possible for the symptoms to develop out of that, but they are temporary and are not permanent. * * *

"By Mr. Marcus: Q. Could the fright come out of the accident? A. Yes.

Q. The fear of automobiles? A. Yes.

Q. That would react on the nervous system, you would say? A. Yes.

Q. It is a mental reaction? A. Yes.

Q. And will continue for a long while? A. I would say not.

Q. How long will it continue? A. I can't say so many months or anything like that.

Q. You could not name so many years? A. It doesn't run into years. It depends on the environment the child lives in.

Q. Can you estimate how much time in this case? A. The child is five years old and ought to be in school.

Q. Let us not argue. A. It is true a good environment will cause these ideas to leave him.

Q. Might it take one or two years? A. I don't think it will take that long.

Q. Will it take over two? A. When the child gets into school he will get over that. By another year he will overcome that fear. That is speculative. As soon as he gets into school, I would say he would get over it within a year.

Q. Then your estimate is that it will take a year before he gets over that? A. Yes.

Q. The bed wetting would take at least a year? A. It depends upon how they treat the child."

In sum, the facts are these:

■ A child of tender years was pinned against a fence by an automobile of the defendant Western Union Telegraph Company, operated by one of its employees. The child suffered a concussion of the brain, bleeding from the nose, abrasion of the left ear near the lobe of the ear, scratches on the left side of the neck, scratches on the left forearm, abrasion of the left arm near the shoulder, abrasion of the left shoulder, abrasion of the left back over the shoulder blade and between the shoulder blades, fracture of the second, fourth, fifth and sixth ribs in the left axillary area, and contusion of the left leg with ecchymosis, shock and nervousness. He was confined to bed for two weeks and to his house for a month from the date of the accident. The parents testified to the fact that the child had been normal prior to the accident and that, at the present time, he is nervous, frightened, sleeps badly, wakes up during the night crying. His body bears evidence of scars which, while not disfiguring, are none the less visible. Physical and mental marks of this type, continuing to the present time, and which are likely to continue for at least a year, according to the admission of the defendants' own physician, call for a substantial award. And an award of $1000, under the circumstances, is so grossly inadequate as to call for a new trial.

■ I need not speculate as to what was in the minds of the jurors in making this wholly inadequate award when, by their verdict for expenditures they showed that they believed the parents. Perhaps, as indicated at the hearing, they may have misunderstood the instructions as to the responsibility of the defendant for the action of its employee, Preston Williams, in parking an automobile on an incline without taking proper precautions to prevent. it from rolling down the street and hitting the child. Or, perhaps, the jury misunderstood the instructions of the court as to the elements to be considered in awarding general damages, especially for pain and suffering which, in a child, may be as keen as in an adult, despite the proverbial ability of children to overcome quickly mental and physical hurts.

At any rate, as I have no power to increase the award as a condition for denying a new trial (see Dimick v. Schiedt, 1935, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150,) my only alternative is to grant a new trial in order to avoid an injustice.

Hence the ruling above made.