3/4/2019 1:38:57 PM

# Compare Results

| Old File: | | New File: |
|---|---|---|
| **17-1042.pdf** | versus | **17-1042_new.pdf** |
| **26 pages (156 KB)** | | **26 pages (155 KB)** |
| 3/1/2019 2:18:56 PM | | 3/4/2019 1:36:12 PM |

| Total Changes | Content | | Styling and Annotations | |
|---|---|---|---|---|
| **1** | 1 | Replacement | 0 | Styling |
| | 0 | Insertions | 0 | Annotations |
| | 0 | Deletions | | |

Go to First Change (page 19)

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BNSF RAILWAY CO. *v.* LOOS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 17–1042.   Argued November 6, 2018—Decided March 4, 2019

Respondent Michael Loos sued petitioner BNSF Railway Company under the Federal Employers' Liability Act (FELA) for injuries he received while working at BNSF's railyard.  A jury awarded him $126,212.78, ascribing $30,000 of that amount to wages lost during the time Loos was unable to work.  BNSF asserted that the lost wages constituted "compensation" taxable under the Railroad Retirement Tax Act (RRTA) and asked to withhold $3,765 of the $30,000 to cover Loos's share of the RRTA taxes.  The District Court and the Eighth Circuit rejected the requested offset, holding that an award of damages compensating an injured railroad worker for lost wages is not taxable under the RRTA.

*Held*:  A railroad's payment to an employee for working time lost due to an on-the-job injury is taxable "compensation" under the RRTA. Pp. 2–14.

  (a) In 1937, Congress created a self-sustaining retirement benefits system for railroad workers.  The RRTA funds the program by imposing a payroll tax on both railroads and their employees, referring to the railroad's contribution as an "excise" tax, 26 U. S. C. §3221, and the employee's share as an "income" tax, §3201.  The Railroad Retirement Act (RRA) entitles railroad workers to various benefits. Taxes under the RRTA and benefits under the RRA are measured by the employee's "compensation," which both statutes define as "any form of money remuneration paid to an individual for services rendered as an employee." §3231(e)(1); 45 U. S. C. §231(h)(1).

  The statutory foundation of the railroad retirement system mirrors that of the Social Security system.  The Federal Insurance Contributions Act (FICA) taxes employers and employees to fund benefits distributed pursuant to the Social Security Act (SSA).  Tax and benefit

amounts are determined by the worker's "wages," the Social Security equivalent to "compensation." Both the FICA and the SSA define "wages" employing language resembling the RRTA and the RRA definitions of "compensation." The term "wages" means "all remuneration" for "any service, of whatever nature, performed . . . by an employee." 26 U. S. C. §3121(a)–(b) (FICA); see 42 U. S. C. §§409(a), 410(a) (SSA). Pp. 2–4.

(b) Given the textual similarity between the definitions of "compensation" and "wages," the decisions on the meaning of "wages" in *Social Security Bd.* v. *Nierotko*, 327 U. S. 358, and *United States* v. *Quality Stores, Inc.*, 572 U. S. 141, inform this Court's comprehension of the RRTA term "compensation." In *Nierotko*, the Court held that "wages" embraced pay for active service as well as pay received for periods of absence from active service, 327 U. S., at 366, and concluded that backpay for time lost due to "the employer's wrong" counted as "wages," *id.,* at 364. In *Quality Stores*, the Court held that severance payments qualified as "wages" taxable under the FICA. 572 U. S., at 146–147. In line with these decisions, the Court holds that "compensation" under the RRTA encompasses not simply pay for active service but also pay for periods of absence from active service— provided that the remuneration in question stems from the "employer-employee relationship." *Nierotko*, 327 U. S., at 366.

Damages awarded under the FELA for lost wages fit comfortably within this definition. See *BNSF R. Co.* v. *Tyrrell*, 581 U. S. ___, ___. If a railroad negligently fails to maintain a safe railyard and a worker is injured as a result, the FELA requires the railroad to compensate the injured worker for working time lost due to the employer's wrongdoing. FELA damages for lost wages, like backpay, are "compensation" taxable under the RRTA. Pp. 4–7.

(c) The Eighth Circuit construed "compensation" for RRTA purposes to mean only pay for active service, but this reading cannot be reconciled with *Nierotko* and *Quality Stores*. In addition, the RRTA's pinpointed exclusions for certain types of payments for time lost signal that nonexcluded pay for time lost remains RRTA-taxable "compensation." Pp. 7–10.

(d) Loos contends that "compensation" does not include payments made to compensate for an injury. This reading, however, is at odds with *Nierotko,* which held that "wages" included backpay awarded to redress "the loss of wages" occasioned by "the employer's wrong." 327 U. S., at 364.

Loos also argues that the exclusion of personal injury damages from "gross income" for federal income tax purposes, see 26 U. S. C. §104(a)(2), should carry over to the RRTA's tax on the "income" of railroad workers. The RRTA, however, uses the term "income" mere-

Syllabus

ly to distinguish the "income" tax on an employee from the matching "excise" tax on a railroad.  Further, Congress specified not "gross income" but employee "compensation" as the tax base for RRTA taxes.  Congress did not exclude personal injury damages from "compensation."  Pp. 10–14.

865 F. 3d 1106, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, ALITO, SOTOMAYOR, KAGAN, and KAVANAUGH, JJ., joined.  GORSUCH, J., filed a dissenting opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————————

No. 17–1042

————————

## BNSF RAILWAY COMPANY, PETITIONER *v.* MICHAEL D. LOOS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[March 4, 2019]

JUSTICE GINSBURG delivered the opinion of the Court.

Respondent Michael Loos was injured while working at petitioner BNSF Railway Company's railyard. Loos sued BNSF under the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. §51 *et seq.*, and gained a $126,212.78 jury verdict. Of that amount the jury ascribed $30,000 to wages lost during the time Loos was unable to work. BNSF moved for an offset against the judgment. The lost wages awarded Loos, BNSF asserted, constituted "compensation" taxable under the Railroad Retirement Tax Act (RRTA), 26 U. S. C. §3201 *et seq.* Therefore, BNSF urged, the railway was required to withhold a portion of the $30,000 attributable to lost wages to cover Loos's share of RRTA taxes, which came to $3,765. The District Court and the Court of Appeals for the Eighth Circuit rejected the requested offset, holding that an award of damages compensating an injured railroad worker for lost wages is not taxable under the RRTA.

The question presented: Is a railroad's payment to an employee for working time lost due to an on-the-job injury taxable "compensation" under the RRTA, 26 U. S. C.

§3231(e)(1)?  We granted review to resolve a division of
opinion on the answer to that question.  584 U. S. ___
(2018).  Compare *Hance* v. *Norfolk S. R. Co.*, 571 F. 3d
511, 523 (CA6 2009) ("compensation" includes pay for time
lost); *Phillips* v. *Chicago Central & Pacific R. Co.*, 853
N. W. 2d 636, 650–651 (Iowa 2014) (agency reasonably
interpreted "compensation" as including pay for time lost);
*Heckman* v. *Burlington N. Santa Fe R. Co.*, 286 Neb. 453,
463, 837 N. W. 2d 532, 540 (2013) ("compensation" in-
cludes pay for time lost), with 865 F. 3d 1106, 1117–1118
(CA8 2017) (case below) ("compensation" does not include
pay for time lost); *Mickey* v. *BNSF R. Co.*, 437 S. W. 3d
207, 218 (Mo. 2014) ("compensation" does not include
FELA damages for lost wages).  We now hold that an
award compensating for lost wages is subject to taxation
under the RRTA.

I

In 1937, Congress created a self-sustaining retirement
benefits system for railroad workers.  The system provides
generous pensions as well as benefits "correspon[ding] . . .
to those an employee would expect to receive were he
covered by the Social Security Act."  *Hisquierdo* v. *His-
quierdo*, 439 U. S. 572, 575 (1979).

Two statutes operate in concert to ensure that retired
railroad workers receive their allotted pensions and bene-
fits.  The first, the RRTA, funds the program by imposing
a payroll tax on both railroads and their employees.  The
RRTA refers to the railroad's contribution as an "excise"
tax, 26 U. S. C. §3221, and describes the employee's share
as an "income" tax, §3201.  Congress assigned to the In-
ternal Revenue Service (IRS) responsibility for collecting
both taxes.  §§3501, 7801.[1]  The second statute, the Rail-

---

[1] The railroad remits both taxes to the IRS.  As to the income tax, the

road Retirement Act (RRA), 50 Stat. 307, as restated and amended, 45 U. S. C. §231 *et seq.*, entitles railroad workers to various benefits and prescribes eligibility requirements. The RRA is administered by the Railroad Retirement Board. See §231f(a).

Taxes under the RRTA and benefits under the RRA are measured by the employee's "compensation." 26 U. S. C. §§3201, 3221; 45 U. S. C. §231b. The RRTA and RRA separately define "compensation," but both statutes state that the term means "any form of money remuneration paid to an individual for services rendered as an employee." 26 U. S. C. §3231(e)(1); 45 U. S. C. §231(h)(1). This language has remained basically unchanged since the RRTA's enactment in 1937. See Carriers Taxing Act of 1937 (1937 RRTA), §1(e), 50 Stat. 436 (defining "compensation" as "any form of money remuneration earned by an individual for services rendered as an employee"). The RRTA excludes from "compensation" certain types of sick pay and disability pay. See 26 U. S. C. §3231(e)(1), (4)(A).

The IRS's reading of the word "compensation" as it appears in the RRTA has remained constant. One year after the RRTA's adoption, the IRS stated that "compensation" is not limited to pay for active service but reaches, as well, pay for periods of absence. See 26 CFR §410.5 (1938). This understanding has governed for more than eight decades. As restated in the current IRS regulations, "[t]he term *compensation* is not confined to amounts paid for active service, but includes amounts paid for an identifiable period during which the employee is absent from the active service of the employer." §31.3231(e)–1(a)(3) (2017).

––––––––––

railroad deducts the amount owed by the employee from her earnings and then forwards that amount to the IRS. See Tr. of Oral Arg. 22–23. See also 26 U. S. C. §3402(a)(1) (employers must "deduct and withhold" income taxes from earnings).

In 1994, the IRS added, specifically, that "compensation" includes "pay for time lost." §31.3231(e)–1(a)(4); see 59 Fed. Reg. 66188 (1994).

Congress created both the railroad retirement system and the Social Security system during the Great Depression primarily to ensure the financial security of members of the workforce when they reach old age. See *Wisconsin Central Ltd.* v. *United States*, 585 U. S. ___, ___ (2018) (slip op., at 1); *Helvering* v. *Davis*, 301 U. S. 619, 641 (1937). Given the similarities in timing and purpose of the two programs, it is hardly surprising that their statutory foundations mirror each other. Regarding Social Security, the Federal Insurance Contributions Act (FICA), 26 U. S. C. §3101 *et seq.*, taxes employers and employees to fund benefits, which are distributed pursuant to the Social Security Act (SSA), 49 Stat. 620, as amended, 42 U. S. C. §301 *et seq.* Tax and benefit amounts are determined by the worker's "wages," the Social Security equivalent to "compensation." See *Davis*, 301 U. S., at 635–636. Both the FICA and the SSA define "wages" employing language resembling the RRTA and the RRA definitions of "compensation." "Wages" under the FICA and the SSA mean "all remuneration for employment," and "employment," in turn, means "any service, of whatever nature, performed . . . by an employee." 26 U. S. C. §3121(a)–(b) (FICA); see 42 U. S. C. §§409(a), 410(a) (SSA). Reading these prescriptions together, the term "wages" encompasses "all remuneration" for "any service, of whatever nature, performed . . . by an employee." *Ibid.*

## II

### A

To determine whether RRTA-qualifying "compensation" includes an award of damages for lost wages, we begin

with the statutory text.[2]  The RRTA defines "compensa-
tion" as "remuneration paid to an individual for services
rendered as an employee."  26 U. S. C. §3231(e)(1).  This
definition, as just noted, is materially indistinguishable
from the FICA's definition of "wages" to include "remuner-
ation" for "any service, of whatever nature, performed . . .
by an employee."  §3121.

  Given the textual similarity between the definitions of
"compensation" for railroad retirement purposes and
"wages" for Social Security purposes, our decisions on the
meaning of "wages" in *Social Security Bd.* v. *Nierotko*, 327
U. S. 358 (1946), and *United States* v. *Quality Stores, Inc.*,
572 U. S. 141 (2014), inform our comprehension of the
RRTA term "compensation."  In *Nierotko*, the National
Labor Relations Board found that an employee had been
"wrongfully discharged for union activity" and awarded
him backpay.  327 U. S., at 359.  The Social Security
Board refused to credit the backpay award in calculating
the employee's benefits.  *Id.,* at 365–366.  In the Board's
view, "wages" covered only pay for active service.  *Ibid.*
We disagreed.  Emphasizing that the phrase "any service
. . . performed" denotes "breadth of coverage," we held that
"wages" means remuneration for "the entire employer-
employee relationship"; in other words, "wages" embraced
pay for active service plus pay received for periods of
absence from active service.  *Id.,* at 366.  Backpay, we

—————

  [2] Before turning to the language of the RRTA, the dissent endeavors
to unearth the reason why BNSF has pursued this case.  The railroad's
"gambit," the dissent surmises, is to increase pressure on injured
workers to settle their claims.  *Post,* at 3.  Contrast with the dissent's
conjecture, BNSF's entirely plausible account of a railroad's stake in
this dispute.  Because the RRA credits lost wages toward an employee's
benefits, see 45 U. S. C. §231(h)(1), BNSF posits that immunizing those
payments from RRTA taxes would expose the system to "a long-term
risk of insolvency."  Tr. of Oral Arg. 4; see Reply Brief for Petitioner 14.

reasoned, counts as "wages" because it compensates for "the loss of wages which the employee suffered from the employer's wrong." *Id.,* at 364.

In *Quality Stores*, we again trained on the meaning of "wages," reiterating that "Congress chose to define wages . . . broadly." 572 U. S., at 146 (internal quotation marks omitted). Guided by *Nierotko*, *Quality Stores* held that severance payments qualified as "wages" taxable under the FICA. "[C]ommon sense," we observed, "dictates that employees receive th[ose] payments 'for employment.'" 572 U. S., at 146. Severance payments, the Court spelled out, "are made to employees only," "are made in consideration for employment," and are calculated "according to the function and seniority of the [terminated] employee." *Id.,* at 146–147.

In line with *Nierotko*, *Quality Stores*, and the IRS's long held construction, we hold that "compensation" under the RRTA encompasses not simply pay for active service but, in addition, pay for periods of absence from active service—provided that the remuneration in question stems from the "employer-employee relationship." *Nierotko*, 327 U. S., at 366.

## B

Damages awarded under the FELA for lost wages fit comfortably within this definition. The FELA "makes railroads liable in money damages to their employees for on-the-job injuries." *BNSF R. Co.* v. *Tyrrell*, 581 U. S. ___, ___ (2017) (slip op., at 1); see 45 U. S. C. §51. If a railroad negligently fails to maintain a safe railyard and a worker is injured as a result, the FELA requires the railroad to compensate the injured worker for, *inter alia*, working time lost due to the employer's wrongdoing. FELA damages for lost wages, then, are functionally equivalent to an award of backpay, which compensates an employee "for a period of time during which" the employee is "wrongfully

separated from his job." *Nierotko*, 327 U. S., at 364. Just as *Nierotko* held that backpay falls within the definition of "wages," *ibid.*, we conclude that FELA damages for lost wages qualify as "compensation" and are therefore taxable under the RRTA.

## III

### A

The Eighth Circuit construed "compensation" for RRTA purposes to mean only pay for "services that an employee actually renders," in other words, pay for active service. Consequently, the court held that "compensation" within the RRTA's compass did not reach pay for periods of absence. 865 F. 3d, at 1117. In so ruling, the Court of Appeals attempted to distinguish *Nierotko* and *Quality Stores*. The Social Security decisions, the court said, were inapposite because the FICA "taxes payment for 'employment,'" whereas the RRTA "tax[es] payment for 'services.'" 865 F. 3d, at 1117. As noted, however, *supra*, at 3–4, the FICA defines "employment" in language resembling the RRTA in all relevant respects. Compare 26 U. S. C. §3121(b) (FICA) ("any service, of whatever nature, performed . . . by an employee") with §3231(e)(1) (RRTA) ("services rendered as an employee"). Construing RRTA "compensation" as less embracive than "wages" covered by the FICA would introduce an unwarranted disparity between terms Congress appeared to regard as equivalents. The reasoning of *Nierotko* and *Quality Stores*, as we see it, resists the Eighth Circuit's swift writeoff.[3]

*Nierotko* and *Quality Stores* apart, we would in any event conclude that the RRTA term "compensation" covers

_____

[3] The dissent's reduction of *Nierotko*'s significance fares no better. *Nierotko*, the dissent urges, is distinguishable because it involved "a different factual context." *Post,* at 7. But as just explained, *supra,* at 6–7, the facts in *Nierotko* resemble those here in all material respects.

pay for time lost. Restricting "compensation" to pay for active service, the Court of Appeals relied on statutory history and, in particular, the eventual deletion of two references to pay for time lost contained in early renditions of the RRTA. See also *post,* at 6–7 (presenting the Eighth Circuit's statutory history argument). To understand the Eighth Circuit's position, and why, in our judgment, that position does not withstand scrutiny, some context is in order.

On enactment of the RRTA in 1937, Congress made "compensation" taxable at the time it was earned and provided specific guidance on when pay for time lost should be "deemed earned." Congress instructed: "The term 'compensation' means any form of money remuneration *earned by* an individual for services rendered as an employee . . . , including remuneration paid for time lost as an employee, but [such] remuneration . . . *shall be deemed earned* in the month in which such time is lost." 1937 RRTA, §1(e), 50 Stat. 436 (emphasis added). In 1946, Congress clarified that the phrase "pa[y] for time lost" meant payment for "an identifiable period of absence from the active service of the employer, including absence on account of personal injury." Act of July 31, 1946 (1946 Act), §2, 60 Stat. 722.

Thus, originally, the RRTA stated that "compensation" included pay for time lost, and the language added in 1946 presupposed the same. In subsequent amendments, however, Congress removed the references to pay for time lost. First, in 1975, Congress made "compensation" taxable when paid rather than when earned. Congress simultaneously removed the 1937 language that both referred to pay for time lost and specified when such pay should be "deemed earned." So amended, the definitional sentence, in its current form, reads: "The term 'compensation' means any form of money remuneration *paid to* an individual for services rendered as an employee . . . ." Act of Aug. 9,

1975 (1975 Act), §204, 89 Stat. 466 (emphasis added).

Second, in 1983, Congress shifted the wage base for RRTA taxes from monthly "compensation" to annual "compensation." See Railroad Retirement Solvency Act of 1983 (1983 Act), §225, 97 Stat. 424–425. Because the "monthly wage bases for railroad retirement taxes [were being] changed to annual amounts," the House Report explained, the RRTA required "[s]everal technical and conforming amendments." H. R. Rep. No. 98–30, pt. 2, p. 29 (1983). In a section of the 1983 Act titled "Technical Amendments," Congress struck the subsection containing, among other provisions, the 1946 Act's clarification of pay for time lost. 1983 Act, §225, 97 Stat. 424–425. In lieu of the deleted subsection, Congress inserted detailed instructions concerning the new annual wage base.

As the Court of Appeals and the dissent see it, the 1975 and 1983 deletions show that "compensation" no longer includes pay for time lost. 865 F. 3d, at 1119; see *post,* at 6–7. We are not so sure. The 1975 Act left unaltered the language at issue here, "remuneration . . . for services rendered as an employee." That Act also left intact the 1946 Act's description of pay for time lost. Continuing after the 1975 Act, then, such pay remained RRTA-taxable "compensation." The 1983 Act, as billed by Congress, effected only "[t]echnical [a]mendments" relating to the change from monthly to annual computation of "compensation." Concerning the 1975 and 1983 alterations, the IRS concluded that Congress revealed no "inten[tion] to exclude payments for time lost from compensation." 59 Fed. Reg. 66188 (1994). We credit the IRS reading. It would be passing strange for Congress to restrict substantially what counts as "compensation" in a manner so oblique.

Moreover, the text of the RRTA continues to indicate that "compensation" encompasses pay for time lost. The RRTA excludes from "compensation" a limited subset of

payments for time lost, notably certain types of sick pay and disability pay. See 26 U. S. C. §3231(e)(1), (4). These enumerated exclusions would be entirely superfluous if, as the Court of Appeals held, the RRTA broadly excludes from "compensation" any and all pay received for time lost.

In justification of its confinement of RRTA-taxable receipts to pay for active service, the Court of Appeals also referred to the RRA. The RRA, like the RRTA as enacted in 1937, states that "compensation" "includ[es] remuneration paid for time lost as an employee" and specifies that such pay "shall be deemed earned in the month in which such time is lost." 45 U. S. C. §231(h)(1). Pointing to the discrepancy between the RRA and the amended RRTA, which no longer contains the above-quoted language, the Court of Appeals concluded that Congress intended the RRA, but not the RRTA, to include pay for time lost. Accord *post,* at 7. Although "'[w]e usually presume differences in language . . . convey differences in meaning,'" *Wisconsin Central*, 585 U. S., at ___ (slip op., at 4), Congress' failure to reconcile the RRA and the amended RRTA is inconsequential. As just explained, the RRTA's pinpointed exclusions from RRTA taxation signal that nonexcluded pay for time lost remains RRTA-taxable "compensation."

## B

Instead of adopting lockstep the Court of Appeals' interpretation, Loos takes a different approach. In his view, echoed by the dissent, "remuneration . . . for services rendered" means the "package of benefits" an employer pays "to retain the employee." Brief for Respondent 37; *post,* at 3–4. He therefore agrees with BNSF that benefits like sick pay and vacation pay are taxable "compensation." He contends, however, that FELA damages for lost wages are of a different order. They are not part of an employee's "package of benefits," he observes, and therefore should

not count as "compensation." Such damages, Loos urges, "compensate for an injury" rather than for services rendered. Brief for Respondent 20; *post,* at 3–4. Loos argues in the alternative that even if voluntary settlements qualify as "compensation," "involuntary payment[s]" in the form of damages do not. Brief for Respondent 33.

Our decision in *Nierotko* undermines Loos's argument that, unlike sick pay and vacation pay, payments "compensat[ing] for an injury," Brief for Respondent 20, are not taxable under the RRTA. We held in *Nierotko* that an award of backpay compensating an employee for his wrongful discharge ranked as "wages" under the SSA. That was so, we explained, because the backpay there awarded to the employee redressed "the loss of wages" occasioned by "the employer's wrong." 327 U. S., at 364; see *supra*, at 5. Applying that reasoning here, there should be no dispositive difference between a payment voluntarily made and one required by law.[4]

Nor does *United States* v. *Cleveland Indians Baseball Co.*, 532 U. S. 200 (2001), aid Loos's argument, repeated by the dissent. See *post,* at 8. Indeed, *Cleveland Indians* reasserted *Nierotko*'s holding that "backpay for a time in

——————

[4] The dissent, building on Loos's argument, tenders an inapt analogy between passengers and employees. If BNSF were ordered to pay damages for lost wages to an injured passenger, the dissent asserts, one would not say the passenger had been compensated "for services rendered." There is no reason, the dissent concludes, to "reach a different result here simply because the victim of BNSF's negligence happened to be one of its own workers." *Post,* at 5. Under the RRTA, however, this distinction is of course critical. The passenger's damages for lost wages are not taxable under the RRTA, for she has no employment relationship with the railroad. In contrast, FELA damages for lost wages are taxable because they are paid only if the injured person previously "rendered [services] as an employee," 26 U. S. C. §3231(e)(1), and, indeed, was working for the railroad when the injury occurred, see 45 U. S. C. §51.

which the employee was not on the job" counts as pay for
services, and therefore ranks as wages. 532 U. S., at 210.
*Cleveland Indians* then took up a discrete, "secondary
issue" *Nierotko* presented, one not in contention here, *i.e.*,
whether for taxation purposes backpay is allocable to the
tax period when paid rather than an earlier time-earned
period. 532 U. S., at 211, 213–214, 219–220. Moreover,
*Quality Stores*, which postdated *Cleveland Indians*, left no
doubt that what qualifies under *Nierotko* as "wages" for
benefit purposes also qualifies as such for taxation pur-
poses. 572 U. S., at 146–147.

C

Loos presses a final reason why he should not owe
RRTA taxes on his lost wages award. Loos argues, and
the District Court held, that the RRTA's tax on employees
does not apply to personal injury damages. He observes
that the RRTA taxes "the *income* of each employee." 26
U. S. C. §3201(a)–(b) (emphasis added). He then cites a
provision of the Internal Revenue Code, 26 U. S. C.
§104(a)(2). This provision exempts "damages . . . received
. . . on account of personal physical injuries" from federal
income taxation by excluding such damages from "gross
income." Loos urges that the exclusion of personal
injury damages from "gross income" should carry over
to the RRTA's tax on the "income" of railroad workers,
§3201(a)–(b).

The argument is unconvincing. As the Government
points out, the District Court, echoed by Loos, conflated
"the distinct concepts of 'gross income,' [a prime compo-
nent of] the tax base on which income tax is collected, and
'compensation,' the separately defined category of pay-
ments that are taxable under the RRTA." Brief for United
States as *Amicus Curiae* 15. Blending tax bases that
Congress kept discrete, the District Court and Loos proffer
a scheme in which employees pay no tax on damages

compensating for personal injuries; railroads pay the full excise tax on such compensation; and employees receive full credit for the compensation in determining their retirement benefits. That scheme, however, is not plausibly attributable to Congress.

For federal income tax purposes, "gross income" means "all income" "[e]xcept as otherwise provided." 26 U. S. C. §61; see §§1, 63 (imposing a tax on "taxable income," defined as "gross income minus . . . deductions"). Congress provided detailed prescriptions on the scope of "gross income," excluding from its reach numerous items, among them, personal injury damages. See §§101–140. Conspicuously absent from the RRTA, however, is any reference to "gross income." As employed in the RRTA, the word "income" merely distinguishes the tax on the employee, an "income . . . tax," §3201, from the matching tax on the railroad, called an "excise tax." §§3201, 3221. See also 1937 RRTA, §§2–3 (establishing an "income tax on employees" and an "excise tax on employers"); S. Rep. No. 818, 75th Cong., 1st Sess., 5 (1937) (stating that the RRTA imposes an "income tax on employees" and an "excise tax on employers"); H. R. Rep. No. 1071, 75th Cong., 1st Sess., 6 (1937) (same).

Congress, we reiterate, specified not "gross income" but employee "compensation" as the tax base for the RRTA's income and excise taxes. §§3201, 3221. Congress then excepted certain payments from the calculation of "compensation." See §3231(e); *supra,* at 9. Congress adopted by cross-reference particular Internal Revenue Code exclusions from "gross income," thereby carving out those specified items from RRTA coverage. See §3231(e)(5)–(6), (9)–(11). Tellingly, Congress did not adopt for RRTA purposes the exclusion of personal injury damages from federal income taxation set out in §104(a)(2). We note, furthermore, that if RRTA taxes were based on "income" or "gross income" rather than "compensation," the RRTA

tax base would sweep in *nonrailroad* income, including, for example, dividends, interest accruals, even lottery winnings. Shifting from "compensation" to "income" as the RRTA tax base would thus saddle railroad workers with *more* RRTA taxes.

Given the multiple flaws in Loos's last ditch argument, we conclude that §104(a)(2) does not exempt FELA damages from the RRTA's income and excise taxes.

\*　\*　\*

In harmony with this Court's decisions in *Nierotko* and *Quality Stores*, we hold that "compensation" for RRTA purposes includes an employer's payments to an employee for active service and for periods of absence from active service. It is immaterial whether the employer chooses to make the payment or is legally required to do so. Either way, the payment is remitted to the recipient because of his status as a service-rendering employee. See 26 U. S. C. §3231(e)(1); 45 U. S. C. §231(h)(1).

For the reasons stated, FELA damages for lost wages qualify as RRTA-taxable "compensation." The judgment of the Court of Appeals for the Eighth Circuit is accordingly reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

### No. 17–1042

_____

## BNSF RAILWAY COMPANY, PETITIONER *v.* MICHAEL D. LOOS

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT*

[March 4, 2019]

JUSTICE GORSUCH, with whom JUSTICE THOMAS joins, dissenting.

BNSF Railway's negligence caused one of its employees a serious injury. After a trial, a court ordered the company to pay damages. But instead of sending the full amount to the employee, BNSF asserted that it had to divert a portion to the Internal Revenue Service. Why? BNSF said the money represented taxable "compensation" for "services rendered as an employee." 26 U. S. C. §3231(e)(1). Today, the Court agrees with the company. Respectfully, I do not. When an employee suffers a physical injury due to his employer's negligence and has to sue in court to recover damages, it seems more natural to me to describe the final judgment as compensation for his injury than for services (never) rendered.

The Court does not lay out the facts of the case, but they are relevant to my analysis and straightforward enough. Years ago, Michael Loos was working for BNSF in a train yard when he fell into a hidden drainage grate and injured his knee. He missed work for many months, and upon his return he had a series of absences, many of which he attributed to knee-injury flareups. When the company moved to fire him for allegedly violating its attendance policies, Mr. Loos sued. Among other things, Mr. Loos sought damages for BNSF's negligence in maintaining the

train yard. He brought his claim under the Federal Employers' Liability Act (FELA), an analogue to traditional state-law tort suits that makes an interstate railroad "liable in damages to any person suffering injury while he is employed" by the railroad "for such injury . . . resulting in whole or in part from the [railroad's] negligence." 45 U. S. C. §51. Ultimately, and again much like in any other tort suit, the jury awarded damages in three categories: $85,000 in pain and suffering, $11,212.78 in medical expenses, and $30,000 in lost wages—the final category representing the amount Mr. Loos was unable to earn because of the injury BNSF's negligence caused.

Then a strange thing happened. BNSF argued that the lost wages portion of Mr. Loos's judgment represented "compensation" to him "for services rendered as an employee" and was thus taxable income under the Railroad Retirement Tax Act (RRTA). 26 U. S. C. §3201 *et seq.* In much the same way the Social Security Act taxes other citizens' incomes to fund their retirement benefits, the RRTA taxes railroad employees' earnings to pay for their public pensions. And BNSF took the view that, because Mr. Loos owed the IRS taxes on the lost wages portion of his judgment, it had to withhold an appropriate sum and redirect it to the government. The company took this position even though it meant BNSF would owe corresponding excise taxes. See 26 U. S. C. §3221. It took this position, too, even though no one has identified for us a single case where the IRS has sought to collect RRTA taxes on a FELA judgment in the 80 years the two statutes have coexisted. The company even persisted in its view after, first, the district court and, then, the Eighth Circuit ruled that Mr. Loos's award wasn't subject to RRTA taxes. Even after all that, BNSF went to the trouble of seeking review in this Court to win the right to pay the IRS.

What's the reason for BNSF's tireless campaign? Is the

company really moved by a selfless desire to protect a federal program from "a long-term risk of insolvency"? See *ante,* at 5, n. 2. Several *amici* offer a more prosaic possibility. Under the rule BNSF seeks and wins today, RRTA taxes will be due on (but only on) the portion of a FELA settlement or judgment designated as lost wages. Taxes will not attach to other amounts attributed to, say, pain and suffering or medical costs. At trial, of course, a plaintiff's damages are what they are, and often juries will attribute a significant portion of damages to lost wages. But with the help of the asymmetric tax treatment they secure today, railroads like BSNF can now sweeten their settlement offers while offering less money. Forgo trial and accept a lower settlement, they will tell injured workers, and in return we will designate a small fraction (maybe even none) of the payments as taxable lost wages. In this way, the Court's decision today may do precisely nothing to increase the government's tax collections or protect the solvency of any federal program. Instead, it may only mean that employees will pay a tax for going to trial—and railroads will succeed in buying cheaper settlements in the future at the bargain basement price of a few thousand dollars in excise taxes in one case today. See Brief for American Association for Justice as *Amicus Curiae* 34–36; Brief for SMART et al. as *Amici Curiae* 5–7.

Whatever the reason for BNSF's gambit, the problems with it start for me at the first step of the statutory interpretation analysis—with the text of the law itself. The RRTA taxes an employee's "compensation," which it defines as "money remuneration . . . for services rendered as an employee to one or more employers." 26 U. S. C. §3231(e)(1). A "service" refers to "duty or labor . . . by one person . . . bound to submit his will to the direction and control of [another]." Black's Law Dictionary 1607 (3d ed. 1933). And "remuneration" means "a *quid pro quo,*" "recompense" or "reward" for such services. *Id.,* at 1528. So

the words "remuneration for services rendered" naturally cover things like an employee's salary or hourly wage. Nor do they stop there, as the Court correctly notes. Rather, and contrary to the court of appeals' view, those words also fairly encompass benefits like sick or disability pay. After all, an employer offers those benefits to attract and keep employees working on its behalf. In that way, these benefits form part of the "*quid pro quo*" (compensation) the employer pays to secure the "duty or labor" (services) the employee renders. Cf. *United States* v. *Quality Stores, Inc.*, 572 U. S. 141, 146 (2014).

But damages for negligence are different. No one would describe a dangerous fall or the wrenching of a knee as a "service rendered" to the party who negligently caused the accident. BNSF hardly directed Mr. Loos to fall or offered to pay him for doing so. In fact, BNSF didn't even pay Mr. Loos voluntarily; he had to wrest a judgment from the railroad at the end of a legal battle. So Mr. Loos's FELA judgment seems to me, as it did to every judge in the proceedings below, unconnected to any service Mr. Loos rendered to BNSF. Instead of being "compensation" for "services rendered as an employee," it seems more natural to say that the negligence damages BNSF paid are "compensation" to Mr. Loos for his injury. That's exactly how we usually understand tort damages—as "compensation" for an "injury" caused by "the unlawful act or omission or negligence of another." Black's Law Dictionary 314 (2d ed. 1910). And that's exactly how FELA describes the damages it provides—stating that it renders a railroad "liable" not for services rendered but for any "injury" caused by the defendant's "negligence." 45 U. S. C. §51; see also *New York Central R. Co.* v. *Winfield*, 244 U. S. 147, 164 (1917) (Brandeis, J., dissenting) (FELA liability is "a penalty for wrong doing," a "remedy" that "mak[es] the wrongdoer indemnify him whom he has wronged").

Of course, BNSF isn't without a reply. Time and again

it highlights the fact that the district court measured the lost wages portion of Mr. Loos's award by reference to what he could have earned but for his injury. But if BNSF's negligence had injured a passenger on a train instead of an employee in a train yard, a jury could have measured the passenger's tort damages in exactly the same way, taking account of the wages she could have earned from her own employer but for the railroad's negligence. *Vicksburg & Meridian R. Co.* v. *Putnam*, 118 U. S. 545, 554 (1886). In those circumstances, I doubt any of us would say the passenger's damages award represented compensation for "services rendered" to her employer rather than compensation for her injury. And I don't see why we would reach a different result here simply because the victim of BNSF's negligence happened to be one of its own workers. Of course, as the Court points out, *ante*, at 11, n. 5, FELA suits may be brought only by railroad employees against their employers. But in cases like ours a FELA suit simply serves in the interstate railroad industry as a federalized substitute for a traditional state negligence tort claim of the sort that could be brought by *anyone* the railroad injured, employee or not. Inescapably, "the basis of liability under [FELA] is and remains negligence." *Wilkerson* v. *McCarthy*, 336 U. S. 53, 69 (1949) (Douglas, J., concurring).

Looking beyond the statute's text to its history only compounds BNSF's problems. To be clear, the statutory history I have in mind here isn't the sort of unenacted legislative history that often is neither truly legislative (having failed to survive bicameralism and presentment) nor truly historical (consisting of advocacy aimed at winning in future litigation what couldn't be won in past statutes). Instead, I mean here the record of *enacted* changes Congress made to the relevant statutory text over time, the sort of textual evidence everyone agrees can sometimes shed light on meaning. See *United States* v.

*Wong Kim Ark*, 169 U. S. 649, 653–654 (1898).

The RRTA's statutory history is long and instructive. Beginning in 1937, the statute defined taxable "compensation" to include remuneration "for services rendered," but with the further instruction that this *included* compensation "for time lost." Carriers Taxing Act of 1937, §1(e), 50 Stat. 436. Courts applying the RRTA's sister statute, the Railroad Retirement Act (RRA), understood this language to capture settlement payments for personal injury claims that would not otherwise qualify as "remuneration . . . for services rendered." See, *e.g.*, *Jacques* v. *Railroad Retirement Bd.*, 736 F. 2d 34, 39–40 (CA2 1984); *Grant* v. *Railroad Retirement Bd.*, 173 F. 2d 385, 386–387 (CA10 1949). Congress itself seemed to agree, explaining in 1946 that remuneration for "time lost" includes payments made "with respect to an . . . absence on account of personal injury." §3(f), 60 Stat. 725. But then Congress reversed field. In 1975, it removed payments "for time lost" from the RRTA's definition of "compensation." §204, 89 Stat. 466. And in 1983, Congress overwrote the last remaining reference to payments "for time lost" in a nearby section. §225, 97 Stat. 424–426. To my mind, Congress's decision to remove the *only* language that could have fairly captured the damages here cannot be easily ignored.

Yet BNSF would have us do exactly that. On its account, the RRTA's discussions about compensation for time lost and personal injuries only ever served to illustrate what has qualified all along as remuneration for "services rendered." So, on its view, when Congress first added and then removed language about time lost and personal injuries, it quite literally wasted its time because none of its additions and subtractions altered the statute's meaning. Put another way, BNSF asks us to read back into the law words (time lost, personal injury) that Congress deliberately removed on the assumption they were never really needed in the first place. As I see it, that is

less "'a construction of a statute [than] an enlargement of it by the court, so that what was omitted, [BNSF] presum[es] by inadvertence, may be included within its scope. To supply omissions [like that] transcends the judicial function.'" *West Virginia Univ. Hospitals, Inc.* v. *Casey*, 499 U. S. 83, 101 (1991) (quoting *Iselin* v. *United States*, 270 U. S. 245, 251 (1926) (Brandeis, J.)).

Looking beyond the text and history of this statute to compare it with others confirms the conclusion. Where the RRTA directs the taxation of railroad employee income to fund retirement benefits, the RRA controls the calculation of those benefits. And, unlike the RRTA, that statute continues to include "pay for time lost" in the definition of "compensation" it uses to calculate benefits. 45 U. S. C. §231(h)(1). Normally, when Congress chooses to exclude terms in one statute while introducing or retaining them in another closely related law, we give effect to rather than pass a blind eye over the difference. Nor is there any question that Congress knows exactly how to tax a favorable tort judgment when it wants. See, *e.g.*, 26 U. S. C. §104(a)(2) (punitive damages are not deductible). Its failure to offer any comparably clear command here should, once more, tell us something.

With so much in the statute's text, history, and surroundings now pointing for Mr. Loos, BNSF is left to lean heavily on case law. The company says we must rule its way primarily because of *Social Security Bd.* v. *Nierotko*, 327 U. S. 358 (1946). But I do not see anything in that case dictating a victory for BNSF. *Nierotko* concerned a different statute, a different legal claim, and a different factual context. There, the plaintiff brought a wrongful termination claim before the National Labor Relations Board, claiming that his employer fired him in retaliation for union activity. The NLRB ordered the employee reinstated to his former job and paid as if he had never left. Under those circumstances, this Court held that for pur-

poses of calculating the plaintiff's Social Security Act benefits, his "wages" should include his backpay award, allocated to the period when he would have been working but for the employer's misconduct. Since then, however, the Court has suggested that at least one of *Nierotko*'s holdings was likely motivated more by a policy concern with protecting the employee's full retirement to Social Security benefits than by a careful reading of the Social Security Act. See *United States* v. *Cleveland Indians Baseball Co.*, 532 U. S. 200, 212–213 (2001); *id.*, at 220–221 (Scalia, J., concurring in judgment). Besides, in this case we're simply not faced with a wrongful termination claim, an award of backpay, or the interpretation of the Social Security Act—let alone reason to worry that ruling for Mr. Loos would inequitably shortchange an employee. So whatever light *Nierotko* might continue to shed on the question it faced, and whatever superficial similarities one might point to here, that decision simply doesn't dictate an answer to the question whether a tort victim's damages for a physical injury qualify as "compensation for services rendered" under the RRTA.

By this point BNSF is left with only one argument, which it treats as no more than a last resort: *Chevron* deference. In the past, the briefs and oral argument in this case likely would have centered on whether we should defer to the IRS's administrative interpretation of the RRTA. After all, the IRS (at least today) agrees with BNSF's interpretation that "compensation . . . for services rendered" includes damages for personal injuries. And the *Chevron* doctrine, if it retains any force, would seem to allow BNSF to parlay any statutory ambiguity into a colorable argument for judicial deference to the IRS's view, regardless of the Court's best independent understanding of the law. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). Of course, any *Chevron* analysis here would be complicated by the gov-

ernment's change of heart. For if *Nierotko* is as relevant as BNSF contends, then it must also be relevant that, back when *Nierotko* was decided, the IRS took the view that the term "wages" in the Social Security Act did *not* include backpay awards for wrongful termination. See 327 U. S., at 366–367. And if "wages" don't include backpay awards for wrongful terminations, it's hard to see how "compensation . . . for services rendered" might include damages for an act of negligence. Still, even with the complications that follow from executive agencies' penchant for changing their views about the law's meaning almost as often as they change administrations, a plea for deference surely would have enjoyed pride of place in BNSF's submission not long ago.

But nothing like that happened here. BNSF devoted scarcely any of its briefing to *Chevron*. At oral argument, BNSF's lawyer didn't even mention the case until the final seconds—and even then "hate[d] to cite" it. Tr. of Oral Arg. 58. No doubt, BNSF proceeded this way well aware of the mounting criticism of *Chevron* deference. See, *e.g.*, *Pereira* v. *Sessions*, 585 U. S. ___, ___–___ (2018) (Kennedy, J., concurring). And no doubt, too, this is all to the good. Instead of throwing up our hands and letting an interested party—the federal government's executive branch, no less—dictate an inferior interpretation of the law that may be more the product of politics than a scrupulous reading of the statute, the Court today buckles down to its job of saying what the law is in light of its text, its context, and our precedent. Though I may disagree with the result the Court reaches, my colleagues rightly afford the parties before us an independent judicial interpretation of the law. They deserve no less.